STATE HIGHWAY COMMISSION v.
L & L CONCESSION COMPANY

1. EMINENT DOMAIN—PROPERTY VALUE—BASIS—EFFECT OF CONDEM-
NATION.
    The value of an interest in property is determined without regard
    to any enhancement or reduction of the value attributable to
    condemnation or the threat of condemnation.

2. PROPERTY—LEASEHOLDS.
    A leasehold and rights derived from a leasehold constitute "prop-
    erty"; just compensation must be made or secured for a
    taking of such property.

3. EMINENT DOMAIN—GOING-CONCERN VALUE—COMPENSATION.
    Compensation is not ordinarily allowed for the goodwill or
    going-concern value of a business operated on real estate
    which is being condemned.

4. EMINENT DOMAIN—BUSINESS'S VALUE—COMPENSATION.
    Recovery is awarded for the value of a business destroyed by
    condemnation.

5. EMINENT DOMAIN—GOING-CONCERN VALUE—COMPENSATION.
    The intangible character of a business's going-concern value
    does not preclude compensation for its taking.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Eminent Domain § 266 *et seq.*
[2, 7, 8, 15] 27 Am Jur 2d, Eminent Domain §§ 352–355.
[3, 5–8, 10, 11, 15] 27 Am Jur 2d, Eminent Domain §§ 287, 353.
[4, 9–11] 26 Am Jur 2d, Eminent Domain § 160.
    27 Am Jur 2d, Eminent Domain §§ 285–287.
[7, 8, 12, 15] Elements and measure of lessee's compensation for
    taking or damaging leasehold in eminent domain. 3 ALR2d
    286.
[12, 13] 27 Am Jur 2d, Eminent Domain §§ 247, 466.
[14] 27 Am Jur 2d, Eminent Domain §§ 408, 409, 471.

6. EMINENT DOMAIN—DAMAGES—GOING-CONCERN VALUE.

> An owner or lessee may recover going-concern value where the condemned property cannot realistically be valued apart from the business there conducted or, as it is sometimes said, the business for which the property is best "adapted."

7. EMINENT DOMAIN—LEASEHOLDS—GOING-CONCERN VALUE—COMPENSATION.

> Value of goodwill or loss of going-concern should not be awarded as separate damages in a condemnation case where the value of the leasehold taken already reflects the value of the business operated on leasehold, because such an award would be redundant.

8. EMINENT DOMAIN—LEASEHOLDS—GOING-CONCERN VALUE—COMPENSATION.

> Going-concern value must be awarded to a lessee in a condemnation case where the valuations of the estates of the lessor and of the lessee in the land condemned do not reflect the going-concern value of the lessee's business.

9. EMINENT DOMAIN—BUSINESS'S VALUE—LOSS OF LOCATION—COMPENSATION.

> The loss of a particular business location, caused by condemnation, may destroy business altogether, for want of access to any other suitable location; "just compensation" requires that whatever injury has been suffered be compensated.

10. EMINENT DOMAIN—DAMAGES—GOING-CONCERN VALUE—LOSS OF BUSINESS.

> A lessee may recover for the loss of going-concern value caused by condemnation if he can establish that business conducted on the leased premises cannot be transferred to another location.

11. EMINENT DOMAIN—DAMAGES—GOING-CONCERN VALUE—LOSS OF BUSINESS.

> Lessee, a concession operator, was entitled to compensation for the going-concern value of its business operated at lessor's racetrack, which was condemned, where the value of the concession was related to the patronage of the racetrack and flowed from the lessee's locational advantage and monopoly position, not conventional customer goodwill resulting from cultivation of customers by the lessee, if the lessee can prove on remand that business it conducted at the racetrack could not be transferred to another location.

12. EMINENT DOMAIN—LEASEHOLDS—VALUATION—UNITARY VALUA-
TION—DIVISION OF AWARD.

Commissioners in a condemnation case may not separately ap-
praise a lessor's and a lessee's interests, but must make a
unitary appraisal of the value of the property as a whole;
it is the duty of the courts to divide the award between the
claimants.

13. EMINENT DOMAIN—LEASEHOLDS—DIVISION OF AWARD.

An award in an eminent domain case should not be divided be-
tween the lessor and the lessee of the condemned land where
the award does not include any amount attributable to the
lessee's interest because the Highway Commission successfully
and erroneously blocked the lessee's attempt to introduce evi-
dence concerning the lessee's interest.

14. EMINENT DOMAIN—INSTRUCTIONS TO COMMISSIONERS—APPEAL
AND ERROR.

Lessee's failure to object to the instructions given to the com-
missioners in an eminent domain case did not constitute a
waiver of its right to object to the court's refusal to enter-
tain its proofs where the court had already ruled that the
lessee would not be allowed to present its case.

15. EMINENT DOMAIN — LEASEHOLDS — LESSEE'S INTEREST — GOING-
CONCERN VALUE.

Judgment on an award in a condemnation case is affirmed as
to the lessor of the condemned land and remanded as to the
lessee of the condemned land where the trial court had ex-
cluded evidence concerning the value of the lessee's interest
in the land.

Appeal from Kent, John H. Vander Wal, J. Sub-
mitted Division 3 March 4, 1970, at Grand Rapids.
(Docket No. 6799.) Decided February 26, 1971.

Condemnation proceedings by the State Highway
Commission against Ora, Inc., and L & L Concession
Company, lessee of defendant Ora. Condemnation
award to Ora, Inc. L & L Concession Company ap-
peals. Affirmed as to Ora, Inc.; remanded with
instructions as to L & L Concession Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Stanley D. Steinborn,* Assistants Attorneys General, and *Roger D. Anderson,* Special Assistant Attorney General, for plaintiff.

*Warner, Norcross & Judd* (by *Harold S. Sawyer*), for defendant Ora, Inc.

*Shapero, Shapero & Cohn* (by *Walter Shapero*), for defendant L & L Concession Company.

Before: R. B. BURNS, P. J., and FITZGERALD and LEVIN, JJ.

LEVIN, J. The State Highway Commission commenced an action to condemn 22 acres of a parcel of land.[1] The condemned land had been improved with a half-mile automobile racing track and grandstands, known as the Grand Rapids Speedrome. Ora, Inc. owned the property. L & L Concession Company had acquired the lessee's interest in a food and souvenir concession lease made by Ora as lessor. The lease gave L & L the exclusive right to sell food and souvenirs in the grandstand until January 1, 1976.

At the hearing before the commissioners the judge refused to allow L & L to prove the existence and value of the lease and L & L made an offer of proof.[2]

---

[1] These proceedings were initiated by the Michigan State Highway Commission pursuant to MCLA § 213.171, *et seq.* (Stat Ann 1958 Rev § 8.171, *et seq.*)

[2] L & L's offer of proof covered the lease, the physical location and layout of the concession area, a description of the equipment used in operating the concession, the food and merchandise sold, the hours per day and the number of days per week and weeks per year the concession had been operated, the labor employed, the amount spent by L & L for equipment, repairs, maintenance and improvements, gross concession receipts, rentals paid to Ora, operating profits and other financial information, information concerning concession

The judge declared that the lease was, by its terms, to be operative only as long as Ora was conducting races, that Ora had ceased to operate the track and, therefore, L & L's interest was valueless.[3]

The commissioners made an award of $168,950, and a judgment on the award for that amount was entered in favor of Ora.  L & L appealed.  Our Court granted a stay of proceedings pending the appeal.

Paragraph 7 of the lease provided:

"Second party [L & L] shall conduct the concession business at the leased premises only at such times as races are being conducted at the racetrack premises.  Second party, at its option, may operate the concession at such times as other public events are being conducted at the race track premises."

Ora ceased to operate the track in July, 1966, several months before the taking in September, 1966.  But the decision to close the track appears to have been attributable to the impending condemnation.[4]  It is an established rule of condemnation law

operations at "similar operations of L & L and others", the history of the operation, the "special adaptability of concession to the business being conducted, and probability of continuance and expectancy of renewal of lease", the "destruction of business and lack of access to substitute", the "valuation of concession lease agreements like the one in question and practices in the trade", the valuation of such lease agreements generally and description of concession business generally, the fair market value based on profitability, and the reasonable rental value of comparable leases.

L & L also offered to prove that the fair market value for cash of the lease in question as well as similar leases is a multiple (approximately 3) of a percentage (approprixmately 25%) of the annual gross receipts of the concession; and that, in this case, the value by this method is approximately $26,000.

[3] The state agreed to pay L & L's moving costs and no issue is presented concerning that element of damage.

[4] There was testimony that representatives of the highway commission had indicated from time to time beginning in 1965 that the property would be taken on various dates in 1966.  An Ora representative testified that racing events must be programmed in advance and that it was losing drivers because it had become known that it would not be operating the track in 1967.  The uncertainty as to

that the value of an interest in property is to be determined without regard to any enhancement or reduction of the value attributable to condemnation or the threat of condemnation.[5]

Viewing the matter, as we must, as if on the date of taking there had been no threat of condemnation, there is no record evidence which would support a finding that the lease was valueless because, for reasons not attributable to the threatened condemnation, the racetrack would not be operated at any time during the remaining nine years of the term of L & L's lease.

Paragraph 7 of the lease was not a condemnation clause, it did not confer on Ora the right to cancel L & L's lease in the event of condemnation or for any other reason. The lease rental was a percentage of L & L receipts. Paragraph 7 addresses itself to the question of the extent of L & L's duty to operate the concession. Such clauses are common in percentage leases.[6] Without such a clause, it might be contended that L & L was obligated to operate the concession at times other than when races were being held at the track.

The agreement of the parties, as expressed in paragraph 7, was that L & L would be obligated to operate the concession only during such times as

the date of the taking and the attendant difficulties in retaining drivers appear to have been responsible for the decision to close in July 1966.

[5] See, generally, 27 Am Jur 2d, Eminent Domain, §§ 282, 283, but see, also, § 436.

See *United States* v. *Virginia Electric & Power Company* (1961), 365 US 624, 635, 636 (81 S Ct 784, 5 L Ed 2d 838); *McGovern* v. *City of New York* (1913), 229 US 363 (33 S Ct 876, 57 L Ed 1228); *In re Urban Renewal, Elmwood Park Project* (1965), 376 Mich 311; *Matina Holding Corporation* v. *State* (1969), 31 App Div 2d 1004 (299 NYS2d 95, 96). This rule has been codified in § 29 of the new highway condemnation act, MCLA § 213.389 (Stat Ann 1970 Cum Supp § 8.261[29]).

[6] See Note: The Lessee's Obligation Under a Percentage Lease, 60 NW L Rev 677 (1956).

races were being held and that it might operate the concession at other public events at its option.

L & L does not contend that Ora was under a duty to operate the racetrack and thereby enable L & L to profit from the operation of its food and souvenir concession; accordingly, there is no need to consider whether such a covenant might properly be implied.[7] Even if Ora was not under an obligation to operate, nonoperation of the track would not terminate L & L's concession which, by its terms, continued until a date nine years after the taking.

The possibility that for economic or other reasons the racetrack might not be operated during some portion of the nine-year period must, indeed, be considered in evaluating L & L's concession. That contingency does not render it impossible to determine the value of the concession with reasonable certainty.[8]

It is a "settled rule in Michigan that a leasehold, and rights derived from a leasehold, constitute

---

[7] L & L's failure to make that contention should not preclude it from doing so, if it becomes pertinent, on remand. Although we abhor piecemeal appeals, we cannot expect counsel to argue complex issues not essential to our disposition merely because they may become relevant on remand or because the unargued issue provides an alternative ground in support of the appeal.

[8] Even a tenant at will or a tenant who holds his tenancy subject to a right of termination held by the lessor has an estate in land and is entitled to be compensated for the value of that interest in the event of condemnation. The uncertainty as to the length of the tenancy affects the value of the leasehold, it does not operate as a condemnation clause to deprive the tenant of any compensation at all. *In re Widening of Gratiot Avenue* (1940), 294 Mich 569, 574; 4 Nichols, Eminent Domain, § 12.42(3), p 320.

*Cf. State Highway Commissioner* v. *Eilender* (1961), 362 Mich 697, 700, holding that where rezoning is "a reasonable possibility [citation omitted] this possibility should be assigned a monetary value in fixing the value of the property as of the time of the taking." See, generally, *Allison* v. *Chandler* (1863), 11 Mich 542, 554; *Purcell* v. *Keegan* (1960), 359 Mich 571, 576.

'property', for the taking of which just compensation must be made or secured."[9]

Ordinarily no compensation is allowed for the goodwill or going-concern value of a business operated on the real estate being condemned.[10] This view has been strongly criticized by commentators who argue that "the owner has no assurance after the taking that he can again combine [at a new location] all the factors of production into his previously efficient and profitable operation."[11] However, since the state but rarely intends to operate the

---

[9] *Lookholder* v. *State Highway Commissioner* (1958), 354 Mich 28, 35–37.

It is unimportant whether L & L's interest is deemed a lease or a license (see *United States* v. *Smoot Sand and Gravel Corporation* [CA 4, 1957], 248 F2d 822; see, generally, 5 Restatement, Property, §§ 565, 566; 26 Am Jur 2d, Eminent Domain, § 177, pp 854, 855, 866; *State Highway Commissioner* v. *Fegin* [1966], 2 Mich App 698, 701); it is transferable property and, as such, the state may not take it without paying for it.

[10] See *In re Edward J. Jeffries Homes Housing Project* (1943), 306 Mich 638, 651, where the Court said: "The loss of good will is not an element of compensation where the business is not taken for use as a going concern. * * * A good plumber should be able to continue his business in almost any location and do as well as he formerly did." Similarly, see *In re Slum Clearance* (1952), 332 Mich 485, 496, 497.

[11] Aloi and Goldberg, A Re-Examination of Value, Good Will and Business Losses in Eminent Domain, 53 Cornell L Rev 604, 636; see, also, pp 615, 618, 619, 625 (1968); Spies and McCord, Recovery of Consequential Damages in Eminent Domain, 48 Va L Rev 437, 452–454 (1962); Slavitt, Inequities and Injustices of Condemnation Acquisitions, 40 Conn B J 11, 14 (1966); Slavitt, More Inequities and Injustices of Condemnation Acquisitions, 43 Conn B J 89, 96–103 (1969); McCormick, The Measure of Compensation in Eminent Domain, 17 Minn L Rev 461, 482 (1933); Phay, the Eminent Domain Procedure of North Carolina: The Need for Legislative Action, 45 NC L Rev 587, 626 (1967); Searles and Raphael, Current Trends in the Law of Condemnation, 27 Fordham L Rev 529, 553 (1958–1959); Comment, Consequential Damages and "Just Compensation" in Federal Condemnations, 18 U of Chicago L Rev 349 (1950–1951); Comment, Eminent Domain Valuations in an Age of Redevelopment: Incidental Losses, 67 Yale L J 61, 96 (1957). See, also, Sax, Takings and the Police Power, 74 Yale L J 36, 63 (1964); Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law, 80 Harv L Rev 1165 (1967); Note, An Act to Provide Compensation for Loss of Goodwill Resulting from Eminent Domain Proceedings, 2 Harv L Legis 445 (1966).

business, the courts have been unwilling to award compensation unless the destruction of the business was a necessary consequence of the condemnation.

Where the condemnee's business has been destroyed, recovery of the value of the business has been awarded. In *Jackson* v. *United States* (Ct Cl, 1952), 103 F Supp 1019, 1020, the government redefined certain restricted military proving ground areas to include fishing grounds where a commercial fisherman had been licensed by the State of Maryland to operate  All other locations had been appropriated by other fishermen and, therefore, the fisherman could not secure a license to fish elsewhere. In requiring the government to compensate the fisherman for the loss of his livelihood, the court declared that he "had a sort of property right in his fishing ground, and that the Government took that property from him".  Similarly, see *United States* v. *Smoot Sand and Gravel Corporation* (CA 4, 1957), 248 F2d 822, 828, holding that whether the rights granted by a state statute to a riparian landowner in sand and gravel under tidal waters "is called a revocable though unrevoked 'license', or a 'profit a prendre' is immaterial.  The label does not matter; the substance cannot be taken away by the United States even for a public use without the owner being made whole."

In *State, ex rel. Mattson,* v. *Saugen* (1969), 283 Minn 402 (169 NW2d 37), the Supreme Court of Minnesota held that the owner of a liquor license was entitled to recover for the destruction, as a result of condemnation proceedings, of the going-concern value of his business where he had proven that he was unable to transfer the license to a new location and there was no evidence that he could not continue to operate the business successfully at the premises being condemned.

In a carefully reasoned opinion, the Minnesota Court declared that the "intangible character of going-concern value does not preclude compensation for its taking." The Court relied in part on *Kimball Laundry Company* v. *United States* (1949), 338 US 1, 5, 13, 14 (69 S Ct 1434, 93 L Ed 1765, 7 ALR2d 1280). In *Kimball,* the Federal government, during a war, had temporarily taken a laundry because it needed the facility to launder military uniforms. The temporary take-over destroyed the goodwill and going-concern value (route lists) of the business. Although the government had no need for the route lists, they had a "transferable value" and the government, therefore, was required to compensate the owner for the destruction of the going-concern value of his business: "this transferable value has an external validity which makes it a fair measure of public obligation to compensate the loss incurred by an owner as a result of the taking of his property for public use."

In so holding, the *Kimball* Court referred to public utility condemnation cases, where the condemning authority has been required to pay for going-concern value, and observed:

"The rationale of the public-utility cases, as opposed to those in which circumstances have brought about a diminution of going-concern value although the owner remained free to transfer it, must therefore be that an exercise of the power of eminent domain which has the inevitable effect of depriving the owner of the going-concern value of his business is a compensable 'taking' of property. (See *United States* v. *General Motors Corp.* [1945], 323 US 373, 378 [65 S Ct 358, 89 L Ed 311, 318, 156 ALR 390]; *cf. United States* v. *Causby* [1946], 328 US 256, [66 S Ct 1062, 90 L Ed 1206]). If such a deprivation has occurred, the going-concern value of the business is at the government's disposal whether or not it

chooses to avail itself of it. Since what the owner had has transferable value, the situation is apt for the oft-quoted remark of Mr. Justice Holmes, 'the question is what has the owner lost, not what has the taker gained. *Boston Chamber of Commerce* v. *City of Boston* [1910], 217 US 189, 195 (30 S Ct 459, 54 L Ed 725, 727)."

In a large number of cases owners and lessees have recovered going-concern value where the condemned property could not be realistically valued apart from the business there conducted, or, as it is sometimes said, the business for which the property is best "adapted".[12]

In this case L & L claims that it can prove both that its concession at the Speedrome had a transferable value and that the business it there conducted could not be transferred to another location.

The going-concern value of L & L's business is not related to customers L & L cultivated but to the

---

[12] *In re Grand Haven Highway* (1959), 357 Mich 20, 27; *In re Widening of Michigan Avenue* (1937), 280 Mich 539, 550, 551; *St. Agnes Cemetery* v. *State* (1957), 3 NY2d 37 (163 NYS2d 655); *City of St. Louis* v. *Union Quarry & Construction Company* (Mo, 1965), 394 SW2d 300, 306; *Phillips Petroleum Company* v. *City of Omaha* (1960), 171 Neb 457, 477 (106 NW2d 727, 739); *Todd* v. *United States* (Ct Cl, 1961), 292 F2d 841; *United States* v. *Eden Memorial Park Association* (CA 9, 1965), 350 F2d 933, 935; *State Highway Commissioner* v. *Hessell* (1967), 5 Mich App 559, 564; *State Highway Commissioner* v. *Hahn* (1968), 380 Mich 115, 117; *State Highway Commissioner* v. *Green* (1967), 5 Mich App 583, 586, 589; *State Highway Commissioner* v. *Miller* (1967), 5 Mich App 591, 595, 596.

Although it is sometimes said that the sum of the parts cannot be greater than the whole, that mathematical concept cannot supersede the constitutional requirements of "just compensation". Thus, if a landlord has a favorable lease this is to be reflected in arriving at the fair market value of his property, although there may be a tendency to avoid the resulting problems by capitalizing the rent payable under the lease as if it were the current rental value. The excess of the actual rent over the current rental value is a separate segment of value to be capitalized and paid for above and beyond a fair market value based on the capitalization of current rental value. See Polasky, The Condemnation of Leasehold Interests, 48 Va L Rev 477, 490 (1962); 1 Orgel on Valuation Under Eminent Domain (2d ed), § 123.

patronage of the racetrack; the concession gives L & L a monopoly on food and souvenir sales at the Speedrome. The value of the concession flows from locational advantage and L & L's monopoly position at that location, not conventional customer goodwill.[13] The value flows from an "adaptation" of the grandstand to a use for which it is suited. Viewed from that perspective, allowing compensation for the value of the concession is consistent with the case law which recognizes that in valuing real estate for condemnation purposes it is proper to include value attributable to a use for which the real estate is adapted.

The efforts to limit *Kimball* to temporary takings elides the central meaning of that case.[14] The Federal government was not required to pay for the route lists because the plant was only temporarily taken or because they represented customer goodwill but because their value was destroyed by the taking. The circumstance which caused the destruction of the value of the route lists was the temporariness of the taking which precluded construction and outfitting of a replacement plant. L & L claims that, given the opportunity to prove its case, it can provide comparable assurances that the value for which it seeks compensation has been destroyed, not saved to its advantage elsewhere.

In the case of *In re Park Site on Private Claim 16, City of Detroit* (1929), 247 Mich 1, 4, the city had

---

[13] It would be an oversimplification to say that L & L did not enjoy the benefits of customer goodwill because it exploited its locational advantage and the goodwill built by the operators of the racetrack. To the extent that L & L's locational advantage and monopoly position gave it an opportunity to exploit that goodwill, it may have enjoyed and appropriated an aspect of that goodwill.

[14] See *State, ex rel Mattson,* v. *Saugen* (1969), 283 Minn 402 (169 NW2d 37), fn 13; Comment, Consequential Damages and "Just Compensation" in Federal Condemnations, 18 U of Chicago L Rev 349, 353, 354 (1950–1951).

condemned the land and building operated by the Belle Isle Coliseum Company. The property was operated by the coliseum company under a lease from a private property owner. The unexpired term of the lease was 24 years. The question presented was whether the coliseum company was entitled to recover damages for business losses in addition to the $280,000 which the property owner (lessor) and the coliseum company (lessee) had before the trial agreed was "the value of the leasehold interest of the Belle Isle Coliseum Company". In holding that prospective profits could not be recovered, the Supreme Court ruled (p 3) that "all of the damages recoverable in this case are included in the value of the leasehold interest for which the lessee has received payment". The Court observed:

"In estimating the value, it is proper to consider the location of the premises, their special adaptability to the business there being conducted, the length of time it has been established, its earnings and profits, the unexpired term of the lease, and every other fact that may affect its value. All of these matters go to *enhance the value of the lease.* They are not substantive elements of damages in condemnation proceedings.

"In the instant case, the lessee stipulated that the value of its leasehold interest was $280,000. The profits of the business, now the subject of this suit, are included in the stipulated value of the leasehold, for which it has received payment from the lessor." (Emphasis supplied.)

Thus, in many cases, as in the case of the *Belle Isle Coliseum,* where the value of the leasehold as an estate in land and the value of the business there conducted cannot readily be separated, the valuation ascribed to the leasehold may reflect the value of the business there operated. In such a case it is

entirely sound to refuse to award as a separate element of damages anything for loss of going-concern value or goodwill; to do so would be redundant.[15]   But where the valuations of the estates of the lessor and of the lessee in land do not reflect the going-concern value of the lessee's business there operated, then, as in *State, ex rel. Mattson, v. Saugen, supra,* and the other cases cited, the going-concern value can, without making the total damages awarded redundant, and, if full compensation is to be paid, must be determined and awarded to a businessman whose business has been destroyed by the taking.

"Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred."[16]

The principle here applicable was recognized in an early Michigan case, *Grand Rapids & I. R. Co.* v. *Weiden* (1888), 70 Mich 390, 395, where our Supreme Court declared:

"Both of the appellants were using their property in lucrative business, in which the locality and its

---

[15] See, also, *Mitchell* v. *United States* (1925), 267 US 341, 345 (45 S Ct 293, 69 L Ed 644), where there was no finding that the government took the business, and where the Court concluded, therefore, that any destruction of the business would have been an unintended incident of the taking.   The Court observed that the special adaptability of the land for use in a particular business is an element to be considered in determining just compensation and that "doubtless such special value of the plaintiff's land was duly considered."

[16] *In re Widening of Bagley Avenue* (1929), 248 Mich 1, 5. Quoted approvingly in *In re Grand Haven Highway* (1959), 357 Mich 20, 28.   Similarly, see *State Highway Commissioner* v. *Eilender* (1961), 362 Mich 697, 699.

Const 1963, art 10, § 2 provides:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law.   Compensation shall be determined in proceedings in a court of record."

surroundings had some bearing on its value. Apart from the money value of the property itself, they were entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change. A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to serious results. *There may be cases when the loss of a particular location may destroy business altogether, for want of access to any other that is suitable for it. Whatever damage is suffered, must be compensated.* Appellants are not legally bound to suffer for petitioner's benefit. Petitioner can only be authorized to oust them from their possessions by making up to them the whole of their losses." (Emphasis supplied.)[17]

In its offer of proof, L & L offered to prove both "destruction of business and lack of access to substitute". It will, of course, be for the trier of fact to determine on remand whether the business conducted by L & L at the Grand Rapids Speedrome was transferable to another location, that is to say, the extent to which, if at all, the business was destroyed by the condemnation of the Speedrome.

It is clear on this record that nothing was included in the computation of the $168,950 award made to Ora in respect to the going-concern value of L & L's concession business. The appraisers used the three

---

[17] In later cases the Court has said that damages may not be recovered, on the authority of *Weiden*, for "loss of profits" due to interruption of business and that in the case of "interruption of business" the recovery will be limited to the amount of the "expenses" attributable to the interruption. *In re Grand Haven Highway* (1959), 357 Mich 20, 31. Such statements cannot properly be read as precluding recovery of damages in the kind of case alluded to in the *Weiden* opinion, where the "loss of a particular location may *destroy business altogether,* for want of access to any other that is suitable for it." (Emphasis supplied.)

L & L is not asking that it be compensated for loss of profits but for the value of the concession; no doubt evidence of the price for which the concession could have been sold will be the best evidence of that value.

traditional approaches in establishing their appraisals: comparable sales,[18] replacement cost,[19] and capitalization of economic rent.

In establishing an economic rent for the Grand Rapids Speedrome for the purpose of arriving at their appraisals of its value, Ora's and the state's appraisers treated the rent paid by L & L to Ora as the economic rent of the space rented to L & L. It is, of course, true that Ora might itself have operated the concession instead of leasing it to an independent operator, such as L & L. And, without regard to whether it had done so, the appraisers might, in capitalizing income, have capitalized the income deprived or that might be derived from the operation of the concession as well as the racetrack. But they did not, they capitalized only the rent paid by L & L which did not reflect the going-concern value of the concession business.

This brings us to the rule of *State Highway Commissioner* v. *Woodman* (1962), 366 Mich 385, 392, 393, where the Court held that under the relevant statute[20] the commissioners may not separately appraise the lessor's and lessee's interests but, rather, must make a unitary appraisal of the value of the property as a whole, and that it is for the court to divide the award among the several claimants.

On the authority of *Woodman,* the highway commission contends that, in the event we decide that

---

[18] While comparable sales of other racetracks were considered by the appraiser, there is nothing in the record that would justify a conclusion that those sales figures reflected the going-concern value of concessions operated at those tracks. Moreover, the appraisers testified that they gave little weight to comparable sales because each track is unique in construction and location.

[19] L & L's concession grants it the right to conduct its business in a space 12 feet by 80 feet, situated underneath the grandstand "together with such additional space situated at said racetrack premises as may be mutually agreed upon by the parties." Manifestly the value of the physical space occupied by L & L was nominal. See fn 21.

[20] MCLA § 213.189 (Stat Ann 1958 Rev § 8.190).

L & L is entitled to be compensated, the $168,950 award should be apportioned between Ora and L & L. Ora responds, we think correctly, that this does not make sense because the $168,950 award does not include any amount attributable to L & L's interest.[21]

The State Highway Commission, having succeeded in excluding any evidence concerning the value of L & L's concession, should not be heard to argue that the award made by the commissioners includes some amount in respect to the going-concern value.

The appraisal of the separate interests of Ora and L & L could, and, perhaps, should have been made at the same time and a lump sum awarded to be apportioned between them by the court. However, even though the state is willing to relitigate the entire case, it would be an undue burden on Ora to require it to relitigate the value of its interest in order to preserve a procedural point under the circumstance that the value ascribed to Ora's interest does not reflect any amount attributable to the going-concern value for which L & L seeks compensation. The product of many days of trial is not to be lightly disturbed.[22]

---

[21] The lease rental was 25% of the food and souvenir receipts plus 1¢ per package on cigarettes and nothing on cigars. If L & L had a favorable lease—if the percentage rental it was obligated to pay was less than the current rental value of the concession—then part of the amount awarded Ora based on a capitalization of current rental value would be apportionable to L & L. See *Pierson* v. *H. R. Leonard Furniture Co.* (1934), 268 Mich 507; see, also, *In re Widening of Michigan Avenue, supra,* fn 12; 4 Nichols, Eminent Domain, § 12.42(3), p 314 *et seq.* But the amount capitalized was the rent actually paid by L & L.

L & L does not claim that the rent it paid Ora was less than it would have to pay elsewhere, but rather, although the lease had a transferable value, that the business it was conducting on Ora's premises under the lease could not be transferred to another location and, thus, was destroyed by the condemnation.

[22] *Western Michigan University Board of Trustees* v. *Slavin* (1968), 381 Mich 23, 26.

Our disposition of this case makes it unnecessary to consider whether the alleged failure of the state to make an offer to L & L deprived the court of jurisdiction to decide the controversy.[23]

There is no merit in the highway commission's contention that L & L waived its right to object to the refusal of the court to entertain its proofs because it did not object to the instructions given to the commissioners.  When the case was submitted to the commissioners and the court instructed them in that regard, the court had already ruled that L & L would not be allowed to prove its case.  It would have been entirely superfluous for L & L to object to the instructions after the court had refused to allow it to present any proofs.

The judgment on the award is affirmed as to Ora, Inc., and the cause is remanded for further proceedings to determine the amount of compensation payable by the State Highway Commission to L & L Concession Company.  Costs to L & L Concession Company.

All concurred.

---

[23] *In re Petition of Rogers* (1928), 243 Mich 517, 521, 522; *State Highway Commissioner* v. *Newstead* (1953), 337 Mich 233, 243, 244; *Lookholder* v. *State Highway Commissioner, supra*, fn 9, p 37.  But see *State Highway Commissioner* v. *Ottawa Circuit Judge* (1954), 339 Mich 390, 396.