## CITY OF DETROIT v WHALINGS, INC

1. EMINENT DOMAIN—GOOD WILL—GOING-CONCERN VALUE.

   Compensation is not ordinarily allowed for the goodwill or going-concern value of a business operated on real estate being condemned.

2. EMINENT DOMAIN—LEASEHOLD VALUE—GOING-CONCERN VALUE.

   The valuation ascribed to the leasehold of real estate in condemnation proceedings may reflect the value of the business operated there where the value of the estate in land and the value of the business cannot readily be separated.

3. EMINENT DOMAIN—GOING-CONCERN VALUE—RELOCATION.

   Compensation is not allowed for the going-concern value of a business operated on real estate being condemned where the possibility of suitable relocation is not foreclosed by the condemnation.

4. EMINENT DOMAIN—GOING-CONCERN VALUE—RELOCATION—EXISTING BUSINESSES.

   Compensation is not allowed for the going-concern value of a business operated on real estate being condemned where the inability of the business to relocate is caused by the fact that all suitable locations are occupied by other businesses rather than by reason of the condemnation itself.

5. EMINENT DOMAIN—LOSS OF GOODWILL—RELOCATION.

   Compensation for loss of goodwill resulting from condemnation of real property on which a business is operated cannot be awarded where the inability of the business to relocate is a question of practicality and feasibility since these questions require inquiries into economic information beyond the reach of the courts.

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 27 Am Jur 2d, Eminent Domain § 287.

Good will as element of damages for condemnation of property on which business is conducted, 41 ALR 1027.

6. EMINENT DOMAIN—GOING-CONCERN VALUE—TORTS.

  The accepted practice of awarding damages for the going-concern value of a business in a tort case is not analogous to compensation in condemnation proceedings since the power of eminent domain is a right of a people exercised through its governing body.

Appeal from Recorder's Court of Detroit, Paul R. Mahinske, J. Submitted Division 1 June 9, 1972, at Detroit. (Docket No. 11575.) Decided September 26, 1972. Leave to appeal denied, 388 Mich 813.

Condemnation proceedings by the City of Detroit against Whalings, Inc. Directed verdict and judgment for the city. Whalings, Inc., appeals. Affirmed.

*Michael M. Glusac,* Corporation Counsel, and *Ronald R. Sogge,* Assistant Corporation Counsel, for petitioner.

*Travis, Warren, Nayer & Burgoyne* (by *Frederick D. Steinhardt),* for respondent.

Before: J. H. GILLIS, P. J., and MCGREGOR and BORRADAILE,* JJ.

BORRADAILE, J. Respondent appeals as of right from an April 6, 1971 judgment entered pursuant to a directed jury verdict in a condemnation proceeding, which provided, *inter alia,* that respondent could not, as a matter of law, introduce evidence regarding alleged loss of good will as an element of damages.

Respondent, Whalings, Inc., has operated a men's clothing store on Woodward Avenue in downtown Detroit, Michigan, for over 100 years. Prior to 1956 this store was located on the west

_____

* Former circuit judge and now probate judge, sitting on the Court of Appeals by assignment.

side of Woodward between Fort and Congress. However, in 1956 these premises were taken by condemnation, and the store thereupon moved to 520 Woodward, after receiving the city's informal assurance that the latter location would not be subject to condemnation. Respondent corporation also operates a men's clothing store in Birmingham, Michigan, and a separate corporation operates another Whalings store in the Fisher Building.

On May 13, 1969, petitioner filed a complaint in the Detroit Recorder's Court initiating condemnation proceedings against certain private property, including the building at 520 Woodward leased by respondent for the operation of its clothing store. Prior to trial the attorneys for petitioner and counsel for the fee owners agreed on a valuation of $335,000 for the fee interest to the premises in question, and petitioner's attorneys and respondent agreed upon a valuation of $54,395 for the latter's trade fixtures. The jury was thereupon directed to find and did in fact return verdicts for awards in the above-described amounts, which amounts were not then and are not now challenged by either the fee owners or respondent.

On September 8, 1970, respondent made a motion stating that it was also claiming damages for destruction of its business and loss of good will resulting from (1) petitioner's condemnation of Whalings' leased premises at 520 Woodward, and (2) the alleged impossibility of respondent's securing a comparable location. Respondent argued that because its clientele was drawn from occupants of the large downtown office buildings and the City-County Building, it could relocate only (1) on Woodward and (2) between the major office buildings and the City-County Building. Since, accord-

ing to respondent, such relocation was impossible, its business was therefore being destroyed by Petitioner's condemnation action, and the city—according to Whalings—should be required to provide compensation therefor.

Counsel for petitioner strenuously resisted respondent's attempt to go before the jury with evidence of this nature, and consequently made a motion for a directed verdict on the basis that damages for the alleged loss of good will were not —*as a matter of law*—permitted under the facts and circumstances of this case, and further argued that such damages were in any event included in the agreed-upon $335,000 value of the fee interest to which both the petitioner and the fee owners had acquiesced. After several days of argument on this motion, respondent's counsel requested the opportunity to bring in his witnesses, in the absence of the jury, in order to make a separate record of the evidence regarding respondent's alleged loss of good will, said record to be utilized for appellate purposes. This request was rejected by the trial judge, who instead suggested that respondent furnish this information via affidavits of the would-be witnesses. Whalings objected to this procedure, but was overruled and did in fact secure such affidavits from its potential witnesses. These affidavits are briefly summarized as follows:

1. Affidavit of James Wienner, stating that the affiant shops at Whalings because of the store's strategic location on Woodward Avenue, and avers that Mr. Wienner would no longer patronize Whalings if the latter relocated.

2. Affidavit of Timothy Jehn, in which the affiant relates results of a statistical study which he performed for respondent. Results of this survey indicate that a large number of Whalings' custom-

ers have business addresses at the City-County Building or at other major downtown office buildings.

3. Affidavit of John P. Heavenrich, respondent's president, in which the affiant relates Whalings' history of over 100 years on Woodward Avenue, avers that a substantial part of respondent's business is generated by foot traffic in and around the private and governmental buildings surrounding Whalings' premises, and argues that relocation—while physically possible—is financially unfeasible, since respondent could not relocate in an area with proximity to the Woodward foot traffic which is purportedly essential to Whalings' continued business existence. Consequently, Mr. Heavenrich contends that the net result of petitioner's condemnation action is the destruction of respondent's business, and compensation should therefore be paid accordingly.

4. Affidavit of Robert Rosman, in which the affiant describes himself as a professional real-estate broker and realtor who was hired by Whalings to analyze the feasibility of relocation. Based upon the results of his investigation as delineated in the affidavit, Mr. Rosman concludes that respondent could feasibly only relocate on Woodward somewhere between Fort and Jefferson Streets. Affiant Rosman also adduces other data which ostensibly supports his finding that the fair market value of Whalings' business (including fixtures) is $106,200.

On September 16, 1970, the trial court granted petitioner's motion for a directed verdict and entered an order which ruled that respondent would "not be permitted to introduce evidence of loss of business as a matter of law and * * * is not entitled to any damages therefor". On October 30,

1970, respondent filed a motion for a new trial, alleging that its claim for damages due to loss of business was separate and distinct from any damages previously awarded to the fee owners of the subject parcel ($335,000), in which respondent claimed no interest. This motion requested a new trial to determine damages incurred for the alleged loss of Whalings' business due to petitioner's condemnation action, and was supported by the affidavits described above. An order denying respondent's motion for a new trial was entered on February 2, 1971, and on April 6, 1971, a final judgment was entered with respect to the disputed premises, awarding $335,000 for the fee interest and $54,395 to Whalings for trade fixtures. As to respondent's claimed loss of good will, this judgment stated:

"C. Loss of goodwill sustained by Whalings, Inc., as element of damages separate and distinct from fee interest and/or trade fixtures—no award because testimony as to such alleged damages not admissible because recovery for such damages is not permitted by the laws of the State of Michigan."

On April 20, 1971, respondent filed a claim of appeal as of right from this final judgment, and now contends that the trial judge improperly barred receipt of proffered evidence regarding Whalings' alleged loss of good will.

The sole issue presented on appeal is whether the lessee, respondent-appellant, should have been able to go to the jury on the question of alleged loss of good will and destruction of its business occurring as a result of its purported inability to relocate in a financially feasible location. We concur with the trial court's refusal to consider the issue.

Const 1963, art 10, § 2, provides that "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law".

As stated by the Court in *State Highway Commission v L & L Concession Co,* 31 Mich App 222, 229–230 (1971):

"Ordinarily no compensation is allowed for the goodwill or going-concern value of a business operated on the real estate being condemned. This view has been strongly criticized by commentators who argue that 'the owner has no assurance after the taking that he can again continue [at a new location] all the factors of production into his previously efficient and profitable operation.' However, since the state but rarely intends to operate the business, the courts have been unwilling to award compensation unless the destruction of the business was a necessary consequence of the condemnation."

Justice Frankfurter in *Kimball Laundry Co v United States,* 338 US 1, 11–12; 69 S Ct 1434, 1440–1441; 93 L Ed 1765, 1775 (1949), discussing condemnation under the Fifth Amendment to the United States Constitution, gives the rationale for the rule of no compensation in condemnation where good will and earning power are claimed as taken, and said:

"What, then, are the circumstances under which the Fifth Amendment requires compensation for such an intangible? Not, indeed, those of the usual taking of fee title to business property, but the denial of compensation in such circumstances rests on a very concrete justification: the going-concern value has not been taken. Such are all the cases, most of them decided by State courts under constitutions with provisions comparable to the Fifth Amendment, in which only the physical property has been condemned, leaving the owner free to move his business to a new location. *E.g., Both-*

*well v United States,* 254 US 321 [41 S Ct 74; 65 L Ed 238 (1920)]; *Banner Milling Co v State,* 240 NY 533; 148 NE 668 [1925]. In such a situation there is no more reason for a taker to pay for the business' going-concern value than there would be for a purchaser to pay for it who had not secured from his vendor a covenant to refrain from entering into competition with him. It is true there may be loss to the owner because of the difficulty of finding other premises suitably situated for the transfer of his good will, and that such loss, like the cost of moving, is denied compensation as consequential. See *Joslin Mfg Co v Providence,* 262 US 668, 676 [43 S Ct 684, 688; 67 L Ed 1167, 1174 (1923)]. But such value as the good will retains, the owner keeps, and the remainder dissipated by removal would not contribute to the value paid for by a transferee of the vacated premises, except perhaps to the extent that the prospect of its loss would induce the owner to hold out for a higher price for his land and building. *Cf. United States v General Motors Corp,* 323 US 373, 383 [65 S Ct 357, 362; 89 L Ed 311, 321; 156 ALR 390, 396 (1945)]. When a condemnor has taken fee title to business property, there is reason for saying that the compensation due should not vary with the owner's good fortune or lack of it in finding premises suitable for the transference of going-concern value. In the usual case most of it can be transferred; in the remainder the amount of loss is so speculative that proof of it may justifiably be excluded. See *Sawyer v Commonwealth,* 182 Mass 245; 65 NE 52 [59 LRA 726 (1902)], per Holmes, C. J. By an extension of that reasoning the same result has been reached even upon the assumption that no other premises whatever were available. *Mitchell v United States,* 267 US 341 [45 S Ct 293; 69 L Ed 644 (1925)]."

Very clearly, the leasehold interest constitutes "property" and just compensation must be made therefor upon a taking. *Lookholder v State Highway Commissioner,* 354 Mich 28 (1958). From the record there seems to be an indication that the lease between the parties provided for division of

an award in case of condemnation. Respondent-appellant seeks to get additional money for its alleged loss of good will and destruction of its business because it says it cannot relocate.

The Court correctly stated in *State Highway Commission v L & L Concession Co, supra,* p 234, that in many cases "where the value of the leasehold as an estate in land and the value of the business there conducted cannot readily be separated, the valuation ascribed to the leasehold may reflect the value of the business there operated".

The fact situation in *State Highway Commission v L & L Concession Co, supra,* differs from this case. There, the lessee occupied a small portion of the total real estate condemned. Its value as a going concern derived not so much from the quality of its product and service as from its monopolistic position. It had the exclusive right to run the food concession at the racetrack and it had a captive audience in the track's patrons. Its value as a going concern, then, was destroyed when its monopoly and its captive audience disappeared. The condemnation of the racetrack therefore effectively destroyed *L & L* as a going concern.

Appellant's attempt to characterize its situation as an analogous one fails for the following reasons: first, Whalings' going-concern value does not derive primarily from its location; it does not enjoy a monopoly, and its customers are not a captive audience. In an affidavit offered to prove that Whalings' present location is crucial, a customer begins by attributing his patronage to Whalings' "fine quality clothing", and only secondarily mentions the convenience of its location. While the convenience of its present location is no doubt a factor in attracting the patronage of the professional persons working in the surrounding area,

the quality of its merchandise must certainly be of at least equal concern to those patrons.

Second, the possibility of finding a suitable location nearby with the same or nearly the same convenience factors is not foreclosed by reason of the condemnation herein. In the *L & L* case, a "suitable location nearby" could only be within the racetrack grounds. The possibility of such relocation was foreclosed by reason of the condemnation of the entire racetrack. For this case to come within the facts of *L & L,* the entire downtown area would have to be included in the condemnation order.

It is clear that if Whalings is unable to relocate, that inability is caused by the fact that all suitable locations are, at present, occupied by other businesses, not because all suitable locations have been condemned. Admittedly, the ultimate effect on Whalings may be the same. But the difficulties of proof involved in the two fact situations are quite different. Where all suitable locations are condemned, proof of destruction of a business almost totally dependent on the location admits of a degree of certainty not possible in the instant case.

Here, appellant wants to offer proof that all suitable relocation areas are nonexistent by reason of their pre-emption by existing businesses. But such proof, standing alone, would not compel a finding of destruction. Appellant would also have to prove that none of those businesses would either sell or go out of business, leaving an available relocation site.

Even if appellant were able to prove both of the above facts, we are still faced with the fact that appellant's value as a going concern depends at least as much on the quality of its operation as on its location. That value may be expected to con-

tinue its existence despite the loss of a prime location.

We do not suggest that appellant will suffer no loss in relocating, nor that it should not be compensated therefor. We do hold that the exception to the rule barring compensation for loss of good will resulting from condemnation cannot be expanded by us to include damages as inherently uncertain as appellant's.

Our reluctance to do so is based on the fact that decisions as to the scope of compensation in eminent domain cases involve policy questions of practicality and feasibility. These questions require inquiries into economic information which are beyond the reach of the courts. See *Recovery of Consequential Damages in Eminent Domain,* 48 Va L Rev 437 (1962).

Respondent-appellant also argues that there is an analogy between a condemning authority and a tortfeasor and thus going-concern value allowed in a tort case should also be allowed in a condemnation case. The power of the public to take private property is carefully limited by constitution and statute with the right to attack initially the authority to take. Such is not the case where a wrongful act is done tortiously. In fact, the power of eminent domain is a vital right of a people exercised through its governing body. *Livonia Twp School Dist v Wilson,* 339 Mich 454 (1954).

Affirmed.

All concurred.