The CITY OF MINNEAPOLIS,
Petitioner, Respondent,

v.

Elizabeth SCHUTT et al., Respondents,

The Towle Company et al., Defendants,

The Mikulay Company, Inc., Appellant.

No. 47008.

Supreme Court of Minnesota.

June 17, 1977.

O'Connor & Hannan and Joe A. Walters and James R. Dorsey, Minneapolis, for appellant.

Walter J. Duffy, Jr., City Atty., Paul T. Aitken, Asst. City Atty., Minneapolis, for City of Minneapolis.

Johnson, Thompson, Klaverkamp & James, Bruce F. Thompson and Patrick J. McLaughlin, Minneapolis, for Elizabeth Schutt et al.

Heard before MacLAUGHLIN, SCOTT and STAHLER, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a summary judgment in a condemnation proceeding. The action was begun by the city of Minneapolis on March 28, 1972, to condemn a portion of a parking ramp in downtown Minneapolis leased and operated by the appellant, The Mikulay Company, Inc. The condemnation commissioners awarded no damages to Mikulay for loss of "going-concern" value, whereupon Mikulay appealed to the district court.[1] On cross-motions for summary judgment, the district court of Hennepin County upheld the commissioners' finding and dismissed the appeal. Mikulay appeals from this adverse summary judgment. We affirm.

The basic facts are brief and not in dispute. At the time of the condemnation, respondent Schutt was the fee owner and lessor of the subject premises. Mikulay occupied the premises as lessee, and operated an enclosed parking ramp thereon. The lease had begun in 1960 and ran for a period of 5 years, with a renewal clause for 2 more consecutive terms. Mikulay had operated the parking ramp since the commencement of the lease, and exercised its options until 1975 as provided.

Minneapolis initiated the condemnation action on March 28, 1972, for the purpose of constructing a public parking ramp. The portion of the Schutt premises to be taken approximated 20 percent of the total parking area in the Mikulay ramp. As a party to the proceeding, Mikulay sought to receive an award of damages suffered for loss of "going-concern" and "efficiency" value due to the loss of space and new competition from the municipal ramp.

The condemnation commissioners denied any separate recovery to Mikulay for "going-concern" value or otherwise. Schutt was awarded $83,195 for the loss of the fee. Mikulay appealed to the district court, seeking an additional award for the loss of "going-concern" value and "efficiency" value. Mikulay sought a partial summary judgment and trial, and both Schutt and Minneapolis moved for summary judgment in their favor. The district court decided in favor of Schutt and Minneapolis, denying Mikulay any award of condemnation damages, concluding that while narrow exceptions to the general rule of no compensation for loss of "going-concern" value did exist, the present case did not fall within the exceptions. The appeal to this court followed.

The legal issue that we decide is whether the trial court was correct in denying Mikulay compensation for loss of "going-concern" and "efficiency" value under the facts of this case. The precise issue presented is the subject of a recent Annotation: Good Will or "Going Concern" Value As Element of Lessee's Compensation for Taking Leasehold in Eminent Domain, 58 A.L.R.3d 566. The general rule stated therein is that in nearly all cases the lessee is not entitled to recover compensation for

---

1. The right of appeal to the district court is provided by Minn.St. 117.145.

loss of "going-concern" [2] value as part of a condemnation award. Various rationales for this rule are given, among them: (1) There has been no "taking" in the constitutional sense of the business itself, *United States v. 70.39 Acres of Land*, 164 F.Supp. 451 (D.C.Cal.1958—applying California law); (2) going-concern value is too intangible to be considered "property" for constitutional purposes, *Haas v. Newark*, 7 N.J. Misc. 437, 146 A. 51 (1929); (3) the amount of damage resulting from loss of going-concern value is too speculative, *Reeves v. Dallas*, 195 S.W.2d 575 (Tex.Civ.App.1946).

Appellant seeks to avoid the impact of this general rule by reliance in the main on three cases: *Kimball Laundry Co. v. United States*, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); *State v. Saugen*, 283 Minn. 402, 169 N.W.2d 37 (1969); *Michigan State Highway Commission v. L & L Concession Co.*, 31 Mich.App. 222, 187 N.W.2d 465 (1971). The principles set out in these cases will not support the result sought by appellant.

The *Kimball* case is unique on its facts, to say the least. In 1943, the Federal government condemned the Kimball Laundry Co. plant for use during the wartime years. The plant was used by the government for about three years and then returned. The company sought compensation for loss of customers on its trade routes during the years it could not operate, whose patronage was probably permanently lost in the interim. The United States Supreme Court held that although the going-concern value of the trade routes was an intangible, it was nevertheless a compensable loss under the Fifth Amendment. The following language, however, makes clear that *Kimball* is not to be broadly interpreted:

> "It is arguable, to be sure, that since an equally suitable plant might conceivably have been available to the petitioner at reasonable terms for the same period as the Government's occupancy of its own plant, and since that would have enabled it to stay in business without loss of going-concern value, it is irrelevant that no such premises happened to be available, as it would have been irrelevant, under a strict application of *Mitchell v. United States*, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, had the Government taken the fee. When fee title to business property has been taken, however, it is fair on the whole that the amount of compensation payable should not include speculative losses consequent upon realization of the remote possibility that the owner will be unable to find a wholly suitable location for the transfer of going-concern value. But when the Government has taken the temporary use of such property, it would be unfair to deny compensation for a demonstrable loss of going-concern value upon the assumption that an even more remote possibility—the temporary transfer of going-concern value—might have been realized. The temporary interruption as opposed to the final severance of occupancy so greatly narrows the range of alternatives open to the condemnee that it substantially increases the condemnor's obligation to him. It is a difference in degree wide enough to require a difference in result." 338 U.S. 14, 69 S.Ct. 1442, 93 L.Ed. 1777.

In the present case, the taking was neither total nor temporary, but rather partial and permanent. Mikulay is not faced with the choice of losing going-concern value or attempting a temporary transfer thereof. It may remain in business on the same location as before, albeit with a reduced capacity to serve former customers. The *Kimball* case does not contemplate such a situation as presented here.

The *Saugen* case is similarly a factually confined exception to the general rule. In *Saugen*, the fee owner [3] of a liquor lounge

---

2. The annotation indicates that courts have generally failed to distinguish between such terms as "good will," "going concern," "efficiency value," and "going business." The term going-concern will be used herein to include the various aspects of Mikulay's claim. 58 A.L. R.3d 566, note 2.

3. Note that both *Kimball* and *Saugen* involve claims for going-concern value by fee owners losing their entire fee, while Mikulay is a lessee seeking compensation for a partial loss of the leasehold.

sought to recover going-concern value when his entire fee was taken by the state. The court acknowledged that a liquor license, while an intangible property interest, is nevertheless a compensable value where it is shown that the license cannot be transferred for use at another suitable location:

"The present case is one where the way is open to award appellant compensation for the going-concern value of the business. Here the condemnee was deprived of far more than the value of cold assets. The exercise of the right of eminent domain effectively destroyed appellant's valid and unrevoked ability to continue to engage in the liquor business. The parties stipulated that absent the taking by the state, there was no evidence that appellant could not have continued to operate its lounge at the premises in question and that the appellant has gone out of the liquor business because it was unsuccessful in transferring its license to another location. It was unable to relocate because of the restricted liquor patrol limits and other peculiarities of the Minneapolis licensing situation. There is no problem here with a speculated loss because the going-concern value has been stipulated to be $17,500. Although a liquor license is a privilege vis-a-vis the licensing authorities, it has qualities of a property right as to third parties, and in eminent-domain proceedings we consider the condemnee to have a property right in his liquor license vis-a-vis the condemnor. The going-concern value of appellant's liquor lounge operating under a valid and unrevoked liquor license was a property right which was taken by the condemnor. As such, we hold that the facts of this particular case fall within an exception to the general rule of no compensation for incidental damages and that appellant is entitled to recover for the loss of the going business (stipulated as $17,500) as well as the usual award for the value of the real property taken (stipulated as $39,500)." 283 Minn. 415, 169 N.W.2d 46.

In the case at bar, appellant is not losing any interest so well-defined as a liquor license, nor are its damages for the alleged loss of going-concern value stipulated so as to remove their speculative nature. It will continue to operate as a going concern, even if profits are somewhat reduced. The *Saugen* case cannot be read so far as to compel recovery here.

The *L & L Concession* case is cited by the above annotation as the only case "in which a court appeared to sanction the award of separate damages for the loss of going concern value." 58 A.L.R.3d 568. In this case, a lessee operating a grandstand food and souvenir concession located at a race track to be condemned sought recovery for loss of going-concern value. The lessee had the exclusive right under the lease to operate a concession at the track. The basis of L & L's claim was that its business had a transferable value which, because of the monopoly position it enjoyed at the track, could not be transferred to another location.

The Michigan Court of Appeals, relying on *Kimball* and *Saugen*, held that L & L would be allowed to recover on the basis suggested:

"The going-concern value of L & L's business is not related to customers L & L cultivated but to the patronage of the race track; the concession gives L & L a monopoly on food and souvenir sales at the Speedrome. The value of the concession flows from locational advantage and L & L's monopoly position at that location, not conventional customer goodwill. The value flows from an 'adaptation' of the grandstand to a use for which it is suited. Viewed from that perspective, allowing compensation for the value of the concession is consistent with the case law which recognizes that in valuing real estate for condemnation purposes it is proper to include value attributable to a use for which the real estate is adapted." 31 Mich.App. 232, 187 N.W.2d 470.

The court viewed the case as an exception to the general rule of no compensation, however, which it expressed as follows:

"Ordinarily no compensation is allowed for the goodwill or going-concern value of a business operated on the real estate being condemned * * * since the State but rarely intends to operate the business, the courts have been unwilling to award compensation *unless the destruction of the business was a necessary consequence of the condemnation.*" 31 Mich.App. 229, 187 N.W.2d 468. (Emphasis added.)

This case must be read together with two subsequent Michigan cases, *City of Detroit v. Whalings, Inc.,* 43 Mich.App. 1, 202 N.W.2d 816, 58 A.L.R.3d 557 (1972), and *City of Lansing v. Wery,* 68 Mich.App. 158, 242 N.W.2d 51 (1976). *Whalings* involves a lessee operating a men's clothing store whose leasehold in downtown Lansing was subject to condemnation. After acknowledging *Kimball* and *L & L,* the Michigan Court of Appeals limited L & L to its facts and held that Whalings' (the clothing store) situation was not analogous:

"The fact situation in *State Highway Commission v. L & L Concession Co., supra,* differs from this case. There, the lessee occupied a small portion of the total real estate condemned. Its value as a going concern derived not so much from the quality of its product and service as from its monopolistic position. It had the exclusive right to run the food concession at the racetrack and it had a captive audience in the track's patrons. Its value as a going concern, then, was destroyed when its monopoly and its captive audience disappeared. The condemnation of the racetrack therefore effectively destroyed L & L as a going concern.

"Appellant's attempt to characterize its situation as an analogous one fails for the following reasons: First, Whalings' going-concern value does not derive primarily from its location; it does not enjoy a monopoly, and its customers are not a captive audience. In an affidavit offered to prove that Whalings' present location is crucial, a customer begins by attributing his patronage to Whalings' 'fine quality clothing,' and only secondarily mentions the convenience of its location.

While the convenience of its present location is no doubt a factor in attracting the patronage of the professional persons working in the surrounding area, the quality of its merchandise must certainly be of at least equal concern to those patrons." 43 Mich.App. 9, 202 N.W.2d 820.

The first of these reasons does not apply to Mikulay, since the downtown location is obviously central to a parking ramp business. However, Mikulay has not lost its business, but only 20 percent of its available space. It does not enjoy a monopoly, nor are its customers a captive audience. It serves the general public (as does the public ramp) in an area where it may be assumed parking space is in short supply. Thus, while it may not be possible for Mikulay to replace the 20-percent loss of space, it nevertheless has not lost every vestige of going-concern value as did the L & L concession. In fact, it has not suffered as severe an injury as the Whalings' store, which the Michigan Court denied recovery for going-concern value.

The very recent *City of Lansing v. Wery, supra,* confirms the *Whalings* limitation on L & L, but allows the possibility of recovery under its own facts. *Wery* involved the condemnation of property leased by a hamburger shop since 1924. The trial court found that it was "a unique hamburger shop" and a "downtown institution." Repeated attempts to relocate the shop failed, prompting the court to find the case analogous to *L & L* and not to *Whalings*:

"We hold that the trial court did not err in considering the going concern value of Kewpee's in determining the condemnation award. While we find the facts in *L & L* similar to the instant case, we do not find *L & L* dispositive. In *L & L,* goodwill was considered a separate element of damages. Here, it was deemed part of the value of the leasehold. We hold that, where special facts similar to those present in *L & L* exist, a court may properly consider goodwill as evidence of the value of the leasehold or the capacity of the realty for use. * * *.

"As the trial court in the instant case specifically found, the Kewpee Hamburger Shoppe was a unique operation in a unique location. It depended greatly on that location, and any significant move would so greatly impair its business as to nearly destroy it. The trial court found, further, that '[t]he premises were adapted for a particular highly productive use *no way dependent on ownership by these particular defendants.*' (Emphasis in original.) The importance of Kewpee's business location is underscored by the fact that, notwithstanding numerous attempts, the parties could not obtain a location remotely comparable to the one condemned." 68 Mich.App. 164, 242 N.W.2d 54.

The facts of the present case are not in the least analogous to *Wery.*

■ The following test can be condensed from these cases: Compensation for loss of going-concern value will be permitted where the holder of the interest to be lost by condemnation can show (1) that his going-concern value will in fact be destroyed as a direct result of the condemnation, and (2) that his business either cannot be relocated as a practical matter, or that relocation would result in irreparable harm to the interest. It can easily be seen that *Kimball, Saugen, L & L,* and *Wery* satisfy this dual test, while *Whalings* and the present case do not. In *Whalings,* the court found that the clothing store would not lose its going-concern value as a result of the condemnation, since its location was not crucial to this value. 43 Mich.App. 9, 202 N.W.2d 820. In the case of Mikulay, it simply cannot be shown that its going-concern value will be destroyed as a direct result of the condemnation.

■ Mikulay specifically cites two aspects of its interest: The loss of customers due to the competition of the public ramp, and a decrease in efficiency due to the reduction in available space. Neither of these is analogous to the kinds of going-concern losses contemplated by the above cases. As for loss of customers, this could occur whenever a new parking facility, public or private, might be constructed near the Mikulay ramp. This type of competitive injury is not compensable, whether the new competition is a private concern or a public enterprise. It is most likely for the public benefit as a whole that strong competition should exist to keep downtown parking rates at a reasonable level, and it is well established that private gain may not be favored over the public good—this is the whole purpose of the right of eminent domain.

■ Similarly, an alleged decrease in efficiency is not a compensable loss of going-concern value under the previous cases. As has been said, many acts of eminent domain operate to the detriment of private parties in furtherance of a valid public purpose, but such a detriment does not become a constitutional taking unless it can be shown that the loss, as in *Kimball, Saugen, L & L,* and *Wery,* was egregious and irreparable. The loss of some measure of profitability resulting from a decrease in available parking space does not rise to this level.

In sum, the loss alleged by Mikulay of going-concern value does not require compensation under the law in its present state despite the inequities pointed out above. The district court was therefore correct in denying Mikulay a separate award for loss of going-concern value under the facts as presented.

Since the appellant was not able to show compensable loss of going-concern value under the criteria developed in the cited cases, we need not reach other issues presented.

Affirmed.