CITY OF DETROIT v MICHAEL'S PRESCRIPTIONS

Docket No. 67664. Submitted February 7, 1985, at Detroit.—Decided July 1, 1985.

The City of Detroit brought a condemnation action against property owned by Michael's Prescriptions, a neighborhood pharmacy located in the Central Industrial Park Project. At the trial held to determine the amount of the condemnation award, the trial court allowed the presentation of evidence of the going concern value of the business, Wayne Circuit Court, David C. Vokes, J. The city appealed from the jury verdict, alleging that admission of such evidence was an abuse of discretion. *Held:*

1. Generally, unless a business is taken for use as a going concern, the owner of a business located on a condemned parcel of realty will not be compensated for the good will or going concern value of the business because the owner of a business may transfer the business to another location.

2. An exception to the general rule exists which may allow recovery for the going concern value of a business where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project. Whether a business is transferable to another location is to be decided on a case-by-case basis.

3. The success of Michael's Prescriptions was attributable to its location near several medical facilities and to the character of the neighborhood and the good will of its established customers. Relocation was realistically foreclosed by the nature of the condemnation project. Thus, the trial court did not abuse its

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Eminent Domain §§ 154, 170, 266, 279.
Local use zoning of wetlands or floodplain as taking without compensation. 19 ALR4th 756.
[2] Am Jur 2d, Eminent Domain §§ 409, 468-472.
Running of interest on judgment where both parties appeal. 11 ALR4th 1099.
[3, 4] Am Jur 2d, Eminent Domain § 287.
Good will or "going concern" value as element of lessee's compensation for taking leasehold in eminent domain. 58 ALR3d 566.

discretion in allowing the introduction of evidence of the going concern value of the business.

4. The verdict was within the range of the testimony offered at trial and will not be disturbed on appeal.

Affirmed.

1. EMINENT DOMAIN — JUST COMPENSATION.

Just compensation for property condemned should place the owner in as good a position as was occupied before the taking.

2. EMINENT DOMAIN — APPEAL — CONDEMNATION AWARDS.

Review of condemnation awards by the Court of Appeals is limited; absent an abuse of discretion with regard to evidentiary matters, the Court will generally affirm an award if it is within the range of the valuation testimony produced at trial.

3. EMINENT DOMAIN — BUSINESS PROPERTY — GOING CONCERN VALUE.

Generally, unless a business is taken for use as a going concern, the owner of the business located on a condemned parcel of realty will not be compensated for the good will or going concern value of the business.

4. EMINENT DOMAIN — BUSINESS PROPERTY — GOING CONCERN VALUE.

Recovery of the going concern value of a business lost to condemnation depends upon the transferability of the business to another location; if the business can be transferred, nothing is taken and compensation is therefore not required; however, recovery will generally be allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project.

*Hylton & Hylton, P.C.* (by *Kenneth N. Hylton, Sr.*), for plaintiff.

*Frimet, Bellamy, Gilchrist & Lites* (by *Frederick B. Bellamy* and *Dan Ellis Champney*), for defendant.

Before: BRONSON, P.J., and M. J. KELLY and S. J. LATREILLE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

M. J. Kelly, J. The City of Detroit appeals as of right from a jury verdict of $275,000 in this condemnation action arising out of the Central Industrial Park Project, more commonly known as the "Poletown Project". See generally, *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981). The condemned property in this case was a neighborhood pharmacy known for over 40 years as "Michael's Prescriptions", a sole proprietorship owned and operated since 1971 by pharmacist Harry Kablak and located on East Grand Boulevard in Detroit. The issue on appeal is whether respondent may be compensated for the going concern value of the business.[1]

We are presented in this case with an issue that is common to several other Poletown cases presently before this Court. After the Supreme Court expeditiously decided, in *Poletown Neighborhood Council, supra,* that the condemnation of Poletown was for a public purpose, the city pursued a plethora of condemnation petitions in circuit court in which the sole issue was valuation of the property taken. Apparently, these cases were heard by two specially assigned judges who diverged on allowing recovery for the going concern value of businesses. Because of this "split" at the trial level a careful review of this issue is in order.

The law of eminent domain is governed in Michigan by the Constitution and by statute. Const 1963, art 10, § 2 obligates the condemnor of private property to render just compensation to the property owner:

"Private property shall not be taken for public use

---

[1] Prior to entering proofs, the petitioner moved for a directed verdict on the ground that the respondent's proofs did not meet the standards under Michigan law allowing compensation for going concern value. Petitioner also moved to strike the testimony of respondent's expert witnesses on this issue.

without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record."

The Uniform Condemnation Procedures Act, MCL 213.51 *et seq.;* MSA 8.265(1) *et seq.,* sets forth the procedures and remedies applicable to the Poletown project. While intangible property interests are compensable, MCL 213.51(h); MSA 8.265(1)(h), no formula or artificial measure of damages will apply in all cases and the amount to be recovered by the owner of the condemned property will generally be left to the discretion of the trier of fact based on the evidence presented. Just compensation should, however, place the owner of the property in as good a position as was occupied before the taking. *In re Widening of Bagley Avenue,* 248 Mich 1, 5; 226 NW 688 (1929); *In re Grand Haven Highway,* 357 Mich 20, 28; 97 NW2d 748 (1959); *State Highway Comm'r v Eilender,* 362 Mich 697, 699; 108 NW2d 755 (1961).

This Court's review of condemnation awards is limited. Absent an abuse of discretion with regard to evidentiary matters, we will generally affirm the award if it is within the range of the valuation testimony produced at trial. *State Highway Comm'r v Schultz,* 370 Mich 78, 84-85; 120 NW2d 733 (1963); *Fenton v Lutz,* 73 Mich App 117, 124; 250 NW2d 579 (1977). A controversy over the going concern value of a business will usually be presented on appeal as an evidentiary issue with this Court deciding whether evidence of the going concern value of a business was properly admitted or excluded at trial. In this case, the city argues that the trial court abused its discretion in admitting such evidence.

The general rule of law is that, unless a business

is taken for use as a going concern, the owner of the business located on a condemned parcel of realty will not be compensated for the good will or going concern value of the business. *In re Jeffries Homes Housing Project,* 306 Mich 638, 651; 11 NW2d 272 (1943); *In re Lansing Urban Renewal (Lansing v Wery),* 68 Mich App 158, 163; 242 NW2d 51 (1976), *lv den* 397 Mich 828 (1976). See also 58 ALR3d 566, § 2, p 568; 81 ALR3d 198, § 2, p 202 and 17 ALR4th 337, § 17, p 437 ff. The justification for this general rule is that the owner of a successful business may generally transfer that business to another location. Where the government does not appropriate the business for its value as a going concern, the owner of that interest need not be compensated since nothing is taken. See *Community Redevelopment Agency of the City of Los Angeles v Abrams,* 15 Cal 3d 813; 126 Cal Rptr 473; 543 P2d 905; 81 ALR3d 174 (1975), *cert den* 429 US 869; 97 S Ct 180; 50 L Ed 2d 149 (1976).

As with most general principles of law, however, the rule prohibiting recovery is not without exception. As far back as 1888, in *Grand Rapids & Indiana R Co v Weiden,* 70 Mich 390; 38 NW 294 (1888), the Michigan Supreme Court considered with favor the claims of two business owners seeking compensation for businesses located on condemned parcels of realty. The Court held:

"Both of the appellants were using their property in lucrative business, in which the locality and its surroundings had some bearing on its value. Apart from the money value of the property itself, they were entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change. A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to

serious results. *There may be cases when the loss of a particular location may destroy business altogether, for want of access to any other that is suitable for it. Whatever damage is suffered, must be compensated.* Appellants are not legally bound to suffer for petitioner's benefit. Petitioner can only be authorized to oust them from their possessions by making up to them the whole of their losses." 70 Mich 395. (Emphasis added.)

In *In re Widening of Michigan Avenue, Roosevelt to Livernois (Ansonia Company v Detroit)*, 280 Mich 539, 550; 273 NW 798 (1937), the Supreme Court quoted with approval the following passage from *Des Moines Wet Wash Laundry v City of Des Moines*, 197 Iowa 1082, 1089-1090; 198 NW 486; 34 ALR 1517 (1924):

" 'Ordinarily, market value is the criterion, but in certain cases it is not the true standard by which to determine the value. It is difficult, if not impossible, to lay down a rule of universal application as to what may be considered as elements of damage, as the equities of the parties must more or less depend upon the particular facts and circumstances of each case. * * * This is particularly true as applied to a leasehold. Value must be determined by a consideration of the uses to which the property is adapted. All circumstances naturally affecting this value are open to consideration. * * *'

\* \* \*

" '*An established trade or business connected with a location clearly enhances the value of a leasehold interest, and just compensation contemplates this fact.*' " (Emphasis added.)

These cases convince us that Supreme Court precedent exists for allowing recovery of the going concern value of a business lost through condemnation, although the circumstances under which such recovery may be had have not yet been articulated by that Court. We arrive at our conclu-

sion despite the Supreme Court's seemingly inconsistent holding in *Jeffries Homes Housing Project, supra,* where the Court summarily stated:

"Each of the appealing defendants makes special objections. One claims that he was allowed nothing for the loss of good will in the sale of a plumbing business which he conducted from his home. The loss of good will is not an element of compensation where the business is not taken for use as a going concern. * * * A good plumber should be able to continue his business in almost any location and do as well as he formerly did in a neighborhood where in many homes there was a lack of adequate plumbing facilities." 306 Mich 651. (Citation omitted.)

While the pronouncement of the general rule in *Jeffries Homes Housing Project* is unequivocal, the Court did not go so far as to overrule *Weiden* or *In re Widening of Michigan Avenue.* We attribute summary treatment of the issue in *Jeffries* to the weakness of the defendant plumber's claim. As the Court noted, the evidence did not suggest that defendant's home-based plumbing business could not be transferred.

While the Supreme Court has approved the principle of compensation for the going concern value of businesses lost to condemnation, the task of applying and developing this principle of recovery has, in recent years, been left to this Court. In a series of decisions spanning a 10-year period, this Court has developed what we believe to be a workable framework for analyzing going concern recovery in the Poletown cases. In 1971, Justice LEVIN, as judge of the Court of Appeals, authored *State Highway Comm v L & L Concession Co,* 31 Mich App 222; 187 NW2d 465 (1971). In that case, the State Highway Commission, under MCL 213.171 *et seq.;* MSA 8.171 *et seq.,* condemned a

parcel of realty in Grand Rapids improved by an automobile racetrack and grandstands. Defendant was the owner of a leasehold interest in the property by which it had the exclusive grandstand concession rights for a specified period of time. At trial, L & L was denied the opportunity to present evidence regarding the value of its leasehold interest and the highway commissioners returned a judgment in favor of the realty owner only. L & L appealed, alleging error in the exclusion of evidence as to the going concern value of the concession business, and this Court agreed.

While recognizing that the good will or going concern value of a business is generally not recoverable in condemnation proceedings, this Court in *L & L* nevertheless observed:

> "In a large number of cases owners and lessees have recovered going-concern value where the condemned property could not be realistically valued apart from the business there conducted, or, as it is sometimes said, the business for which the property is best 'adapted'." 31 Mich App 232.

The panel went on to identify some of the factors which must be considered in determining whether the condemned property and the business could be separately valued.

> "The going-concern value of L & L's business is not related to customers L & L cultivated but to the patronage of the racetrack; the concession gives L & L a monopoly on food and souvenir sales at the Speedrome. The value of the concession flows from locational advantage and L & L's monopoly position at that location, not conventional customer good-will. The value flows from an 'adaptation' of the grandstand to a use for which it is suited. Viewed from that perspective, allowing compensation for the value of the concession is consistent with the case law which recognizes that in valuing real

estate for condemnation purposes it is proper to include value attributable to a use for which the real estate is adapted." 31 Mich App 232-233.

The case was remanded for a hearing to determine as a separate element of damages the amount recoverable by L & L for its leasehold interest in the condemned realty.

Five years later, this Court decided *In re Lansing Urban Renewal (Lansing v Wery), supra,* involving the condemnation of a parcel of property upon which was located the Kewpee Hamburger Shoppe. The trial court described the business as:

" 'a unique "hamburger shop," which had a wide reputation for both the quality of its product and quickness of service. The "Kewpee" was a "downtown institution" lying on the fringe of the central business district within easy walking distance from the State Capitol, the commercial center of Lansing, and the ever-growing Lansing Community College. Its drive-in window operation also provided a facility for those who wanted a "good hamburger" to drive in throughout the day and evening hours.

\* \* \*

" 'The basic costs of this business were excellent. They reflected good controls, careful pricing and competent management. The restaurant had produced substantial profit during the period when other operations were suffering from competition from the new wave of fast-food franchises.' " 68 Mich App 160.

Defendants' attempts to relocate were unsuccessful primarily because of restrictions imposed by the various branches of the city government. The trial court compensated defendant for the loss of the going concern value of the business and this Court affirmed, stating:

"As the trial court in the instant case specifically

found, the Kewpee Hamburger Shoppe was a unique operation in a unique location. It depended greatly on that location, and any significant move would so greatly impair its business as to nearly destroy it. The trial court found, further, that '[t]he premises were adapted for a particular highly productive use *no way dependent on ownership by these particular defendants'*. (Emphasis in original.) The importance of Kewpee's business location is underscored by the fact that, notwithstanding numerous attempts, the parties could not obtain a location remotely comparable to the one condemend." 68 Mich App 165.

This Court in *Wery* relied heavily on the analysis set forth in *L & L* but did not find it dispositive.

Contrasted to these two cases are *Detroit v Whalings, Inc,* 43 Mich App 1; 202 NW2d 816 (1972), *lv den* 388 Mich 813 (1972), and *State Highway Comm v Gaffield,* 108 Mich App 88; 310 NW2d 281 (1981), in which this Court applied the principles announced in *L & L,* and relied upon in *Wery,* but concluded that the business owners could not recover the going concern value of their businesses. In *Whalings,* a men's clothing store, located for over 100 years on Woodward Avenue in downtown Detroit, was closed as a result of the city's condemnation of the parcel of land on which it was located. Defendant's attempts to relocate were unsuccessful due to the unavailability of business space in the immediate area. The trial court excluded evidence of the going concern value of the defendant's business and this Court affirmed, holding:

"Whalings' going-concern value does not derive primarily from its location; it does not enjoy a monopoly, and its customers are not a captive audience. In an affidavit offered to prove that Whalings' present location is crucial, a customer begins by attributing his patronage to Whalings' 'fine quality clothing', and only

secondarily mentions the convenience of its location. While the convenience of its present location is no doubt a factor in attracting the patronage of the professional persons working in the surrounding area, the quality of its merchandise must certainly be of at least equal concern to those patrons.

"Second, the possibility of finding a suitable location nearby with the same or nearly the same convenience factors is not foreclosed by reason of the condemnation herein. In the *L & L* case, a 'suitable location nearby' could only be within the racetrack grounds. The possibility of such relocation was foreclosed by reason of the condemnation of the entire racetrack. For this case to come within the facts of *L & L,* the entire downtown area would have to be included in the condemnation order." 43 Mich App 9-10.

In *Gaffield,* this Court was presented with a claim for going concern value similar to the one pursued by the plumber in *In re Jeffries Homes Housing Project, supra.* Respondents in *Gaffield* owned and operated a photography studio in Plymouth and used the backyard of their private residence as an outdoor set. In proceedings initiated by the highway commission for the condemnation of their residential property, respondents sought and were denied the going concern value of their backyard. This Court affirmed:

"In the instant case no competent testimony going to the merits which may have changed the result was excluded. Those factors cited in *L & L* and *In re Lansing Urban Renewal* justifying an award of going-concern value were not present in the instant case. Respondents did not lose their entire business because of the condemnation of their residential property. The location of their residential property was not crucial to the conduct of their downtown photography business. Their business did not consist solely of environmental photography. Respondents drew customers because of Mr. Gaffield's acclaim as a photographer, not because

he took, on some occasions, outdoor photographs. Relocation was possible, though admittedly difficult, as is evidenced by the fact that respondents have subsequently purchased comparable property for their residence. Nor did respondents have a monopoly on environmental photography, much less the photography business as a whole, in Plymouth, as was the situation in *L & L*. Also, the going-concern value of respondents' photographic business did not derive primarily from the location of their residence. Unlike *L & L,* respondents' customers were not a captive audience. Finally, unlike the restaurant in Lansing, respondents' move did not 'so greatly impair its business as to nearly destroy it'. Also, unlike the restaurant, ownership of the photography studio by respondents in the instant case is vital. The instant case does not involve a situation where 'the premises were adapted for a particular highly productive use'. *In re Lansing Urban Renewal, supra,* 165." 108 Mich App 94.

Despite the different results reached in these four cases, it is clear that recovery of the going concern value of a business lost to condemnation will depend on the transferability of that business to another location. If the business can be transferred, nothing is taken and compensation is therefore not required.[2] Whether a business is transferable will be decided on a case by case basis inasmuch as a specific factual analysis is required. Generally, however, recovery will be allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project. In large scale condemnation

[2] We note, however, that where a business is transferable, the business owner may recover for certain business interruption expenses. See *In re Park Site on Private Claim 16,* 247 Mich 1; 225 NW 498 (1929). It should be clear that recovery for business interruption damages and recovery for going concern value are mutually exclusive since one assumes the continuation of the business and the other assumes its loss. This distinction was not always made by respondents below.

projects such as Poletown, involving the elimination of an entire segment of the residential and business community, transferability of neighborhood businesses is often foreclosed.

Michael's Prescriptions was located directly across the street from the entrance to St. Joseph Mercy Hospital. The Samaritan Medical Clinic was located one block away and at some point during the condemnation project occupied the same building that housed Michael's Prescriptions. Also in the same building were two physicians' offices. Michael's Prescriptions sold only pharmaceuticals, measured 20 feet by 28 feet, and was operated by Mr. Kablak, whose severe hearing impairment necessitated both amplified telephones and his son's assistance in filling prescriptions.

Respondent's accountant testified that due to the unique location of the pharmacy and monopolization of the prescription business of St. Joseph Mercy Hospital's emergency room, Michael's Prescriptions generated phenomenal gross sales of pharmaceuticals. Testimony established that when Michael's Prescriptions and St. Joseph Mercy Hospital were the only businesses operating in the condemned area, Michael's Prescriptions still generated its highest sales and most profitable year. The accountant classified the condemned property as a neighborhood pharmacy but considered it unique because of its location, operation and high income in comparison to eight other prescription pharmacies that he represented.

Evidence presented at trial regarding relocation efforts suggest that Michael's Prescriptions was nontransferable. Mr. Kablak and a professional realtor were unsuccessful in their attempts to find a location with a similar traffic pattern. While the business did relocate 12 blocks away from its original vantage point, sales and profits have al-

ready declined and evidence introduced at trial established that the trend would continue.

In our view, a significant factor in the inability of Michael's Prescriptions to relocate as a going concern is the nature of the condemnation project itself. As Justice RYAN pointed out in his dissenting opinion in *Poletown Neighborhood Council, supra,* the Poletown project swept away an entire community, "a tightly-knit residential enclave of first- and second-generation Americans". 410 Mich 658. The Poletown condemnations entailed "intangible losses, such as severance of personal attachments to one's domicile and neighborhood and the destruction of an organic community of a most unique and irreplaceable character". 410 Mich 682-683. The success of Michael's Prescriptions was attributable in part to the locational advantage of being so near a hospital, an emergency room, a clinic, and two physicians' offices. Its success also derived in no small part from the character of the neighborhood as described above and the good will of its established customers. Because of the condemnation of the entire surrounding neighborhood, the relocation of Michael's Prescriptions and other similar neighborhood businesses was realistically foreclosed by the scattering of established customers throughout the metropolitan area and by the elimination of other "business-generating businesses". This situation was recognized in *Community Redevelopment Agency of the City of Los Angeles v Abrams, supra,* pp 825-826, where the court rejected a claim similar to the one submitted in the instant case but nevertheless stated:

"We judicially notice the following as facts 'of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute' * * *:

The conditions of modern American life, including the increased concentration of people in urban centers and the need for increased governmental activity in the areas of transportation and urban redevelopment, have resulted in the disruption and displacement of increased numbers of people and businesses by government projects. Moreover, the peculiar nature of urban redevelopment programs, which act upon large areas of contiguous property, often involves the uprooting of entire neighborhoods and the consequent dispersal of their business and residential occupants to other areas.

* * *

"While the effects of this process are severe in both a personal and social sense for the residential occupants of areas subjected to redevelopment, its effects upon business occupants may be even more serious. One such effect relates to the business goodwill which such a businessman has built up in the location of which he is deprived by condemnation. In some cases, as for example in the case of a mail order business whose clientele is not rooted in the area affected by redevelopment, business goodwill may be transferred with relative ease to a new location outside the redevelopment area. At the other end of the spectrum, however, are businesses which depend on a clientele within the redevelopment area. In many such cases business goodwill is based almost wholly upon the businessman's personal acquaintance with his customers and his knowledge of their particular needs. Such goodwill is by its nature not freely transferable within the context of wholesale condemnation pursuant to urban redevelopment, for the inevitable effect of such condemnation is to disperse the businessman's clientele throughout the urban area, with the result that any new location chosen by him will be unable to continue to profitably serve a significant portion of them." (Citations omitted.) 15 Cal 3d 825-826.

In the instant case, Michael's Prescriptions lost its leasehold interest in the underlying realty, its established customers and the prescription market generated by the neighborhood hospital, clinic and

physicians' offices. Unlike *Whalings, supra,* and *Gaffield, supra,* this respondent did not provide the type of specialized product that would encourage its established customers to continue patronage at a new and more distant location. As this Court recognized in rejecting the claim for going concern value in *Whalings, supra,* "[f]or this case to come within the facts of *L & L,* the entire downtown area would have to be included in the condemnation order". The Poletown project fits this requirement hand and glove.

We conclude that the trial court did not err in allowing the introduction of evidence as to the going concern value of Michael's Prescriptions. Since the verdict was within the range of the valuation testimony offered at trial, we decline to disturb it on appeal. Moreover, we find that the method of valuation used in determining the going concern value of Michael's Prescriptions was proper under *In re Park Site on Private Claim 16,* 247 Mich 1; 225 NW 498 (1929), and that the jury's award reflects the value of the leasehold interest. *Wery,* 68 Mich App 163.

Affirmed.