CITY OF DETROIT v CAMPBELL

Docket No. 76851. Submitted February 7, 1985, at Detroit.—Decided
     October 8, 1985.

   The City of Detroit brought a condemnation action in Wayne
       Circuit Court against property owned by Gary Campbell which
       was located in the Central Industrial Park Project. On one of
       the two parcels involved was a building housing the ground
       floor DeClark's Bar, a bar catering to employees of nearby
       industrial concerns, and two apartments on the upper floor.
       The other parcel was located nearby and was used as a parking
       lot for the bar. Campbell sought compensation for the going
       concern value of the bar business. The city, prior to trial,
       moved to exclude evidence relative to compensation for good
       will or the going concern value of the business. The trial court,
       George T. Martin, J., granted the motion. Campbell moved for
       clarification or certification for appeal of Judge Martin's ruling.
       The motion was denied. At trial Campbell's expert witness used
       the costs expended by Campbell to acquire a new bar business
       located on rented property to establish the value of the con-
       demned property. The trial court, however, specifically in-
       structed the jury that they could not consider the witness's
       testimony relative to value based on the capitalization of the
       costs associated with renting the building at the new locations
       and the loss of apartment rentals which had been derived at
       the old location. The testimony as to the value of the property
       ranged from $210,000 by Campbell to $59,800 by one of the
       city's expert witnesses. The jury returned a verdict of $85,000.
       Campbell filed a motion for a new trial, which was denied.
       Campbell appealed. *Held:*

       1. While generally the owner of a business located on a
       condemned parcel will not be compensated for good will or the
       going concern value of the business, the owner may recover
       those items where the business derives its success from a
       location that is not easily duplicated or where relocation is

REFERENCES FOR POINTS IN HEADNOTES
[1-4] Am Jur 2d, Eminent Domain § 287.
   Good will as element of damages for condemnation of property on
       which private business is conducted. 81 ALR3d 198.

foreclosed because the magnitude of the condemnation project makes it impossible for the business to retain its customer base. The trial court erred in holding that recovery of compensation for the going concern value of the business was precluded as a matter of law without first considering whether the nature of the condemnation project foreclosed any effective transfer of the business.

2. A claim for the going concern value of a business and a claim for business interruption expenses are mutually exclusive claims, in that the former assumes that the business cannot be effectively transferred, while the later presumes such a transfer of the business.

3. It was not error for the trial court to instruct the jury to disregard the testimony of Campbell's expert relative to capitalization of costs associated with Campbell's rental costs of the new bar and loss of rental income at the condemned location since it is the fair compensation for the condemned property, not the value of the replacement property, that is the focus of the condemnation proceedings.

Remanded.

1. EMINENT DOMAIN — BUSINESS PROPERTY — GOING CONCERN VALUE.

Generally, unless a business is taken from use as a going concern, the owner of the business located on a condemned parcel of realty will not be compensated for the good will or going concern value of the business.

2. EMINENT DOMAIN — BUSINESS PROPERTY — GOING CONCERN VALUE.

Recovery of the going concern value of a business lost to condemnation depends upon the transferability of the business to another location; if the business can be transferred, nothing is taken and compensation is therefore not required; however, recovery will generally be allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project.

3. EMINENT DOMAIN — BUSINESS PROPERTY — GOING CONCERN VALUE.

It is error for a trial judge in a condemnation action to deny in a summary proceeding a claim for compensation for the going concern value fo a business without first considering whether the nature of the condemnation project effectively forecloses transfer of the business.

4. EMINENT DOMAIN — BUSINESS PROPERTY — BUSINESS INTERRUPTION
   EXPENSES — GOING CONCERN VALUE.

> A claim in a condemnation action for compensation for business
> interruption expenses is mutually exclusive from a claim for
> compensation for the going concern value of the business, since
> the former claim assumes continuation of the business and the
> latter assumes the loss of the business.

*James C. Cobb, Jr.,* for petitioner.

*Mason, Steinhardt & Jacobs, P.C.* (by *Frederick D. Steinhardt* and *Walter B. Mason, Jr.),* for respondent.

Before: BRONSON, P.J., and M. J. KELLY and S. J. LATREILLE,* JJ.

PER CURIAM. Gary Campbell appeals as of right from a judgment and verdict of $85,000 rendered on December 7, 1983, following a jury trial in the Wayne County Circuit Court.

This case arises out of the Poletown condemnation which began in November, 1980. See *Detroit v Michael's Prescriptions* 143 Mich App 808; 373 NW2d 219 (1985). The subject property acquired by the City of Detroit under eminent domain was a bar known as "DeClark's Bar", originally located at 2201-3 D. Milwaukee, Detroit, and the vacant lot across the street, now known as Parcels Nos. 1093 and 1161.

DeClark's Bar was owned by Gary Campbell and consisted of a two-story framed building housing the bar on the first floor and two apartments on the second floor, with a half-basement and an attached three-car garage. Included in the subject property was a double parking lot which was 60 by 120 feet, located across the street from the bar. The real estate had been improved with new

---

* Circuit judge, sitting on the Court of Appeals by assignment.

floors, ceilings and walls, new plumbing and fixtures, and electrical work.

Prior to trial, the city moved to exclude evidence of either compensation for loss of good will or the going concern value of defendant's business. On April 18, 1983, the trial court rendered its opinion, and an order granting the city's motion for partial summary judgment on the issue of compensation for loss of good will and for going concern value was entered on June 3, 1983.

On June 10, 1983, Campbell filed a motion for clarification and/or certification of Judge Martin's opinion of April 18, 1983. Campbell stated that the court's opinion was based on the assumption that he was seeking damages for good will separate from the real estate and that, since his position rested on his capacity to prove that the going concern value was inseparable from the real estate, the entire opinion rested on an incorrect premise and should have been clarified. Campbell further asserted that, during the Poletown litigation, owners' claims for compensation for the going concern value were uniformly denied by preliminary motion by Judge Martin while claims before the other specially assigned judge, Judge David Vokes, were permitted to be asserted at trial and this presented a "substantial ground for a difference of opinion" and a controlling question for certification on appeal under GCR 1963, 806.3(1)(a)(ii). By order entered July 12, 1983, this motion was denied by Judge Martin.

At trial, Campbell testified that the bar had a capacity of more than 100 persons and that his business had approximately 150 to 200 regular customers. He stated further that DeClark's business was primarily derived from industrial concerns located around the subject property, with

customers frequenting the bar from 7:00 a.m. to closing for drinks and sandwiches.

Campbell stated that he had conducted an extensive search for a potential replacement for De-Clark's, and that, since he was unable to transfer the liquor license from DeClark's to another location, it was being held in escrow by the State of Michigan. He was not seeking compensation for it. He stated further that in May of 1982 he entered into transactions for the right to operate the bar business at the Silver Cup Lounge, 9198 Cadieux, Detroit, and that of some 200 regular DeClark's customers, only one comes into the Silver Cup presently. Campbell testified that, in order to be put in as good a position as if the taking of his real estate had not occurred, DeClark's would have to be valued at $210,000.

William Walsh, a real estate appraiser, testified as to his opinion of value of the subject property based on what Campbell had paid in replacement or substitution costs for the Silver Cup Lounge. Based on his investigation, Walsh made the following analysis of the indication of value of the property based on the Silver Cup as the "least costly equally desirable substitute". He found that the defendant paid $115,000 for the license, fixtures, right to do business at the site and right to enter into a lease, and an additional $17,376 for the purchase of an adjacent parking lot, for a total cost of $132,376.

From this amount, Walsh subtracted the amount Campbell paid for fixtures and the liquor license at the Silver Cup Lounge, because these were not in issue as to the subject property, arriving at an adjusted cost of $107,376. Walsh then made an adjustment for the difference between fee ownership at DeClark's (including the apartments), versus leasing at Silver Cup, in the amount of

$8,400, which capitalized at 10% (based on bank interest rates) amounted to $84,000, for a total value of $191,376.

Prior to entering proofs, the city filed a motion for a directed verdict, arguing that the testimony as to value by Campbell and Walsh should be excluded for the following reasons. First, that both of their valuations of the property were incorrectly based on the replacement costs of acquiring the Silver Cup Lounge. Secondly, that Walsh's appraisal incorrectly included a leasehold value based on a $90,000 cost incurred by Campbell for the right to do business at the Silver Cup Lounge. Next, the city argued that Walsh's adjustment figure of $84,000 reflecting the future optional renting arrangements with the Silver Cup was an incorrect measure of the fair market value of the subject property. Finally, the city argued that Campbell's claim for business interruption expenses was not properly before the court.

The trial court reserved its ruling until the close of the city's proofs, at which time the court granted the city's motion for a directed verdict in part.

Raymond Thomas, a real estate appraiser hired by the City of Detroit, testified as to his opinion of value based on the "market data approach", arriving at a value of $59,800, based on comparable sales of real estate.

Judge Martin instructed the jury that the range of testimony produced at trial as to the value of the property was between $59,800 and $210,000. After the jury rendered a verdict of $85,000, Campbell moved for a new trial. An order denying Campbell's motion for a new trial was entered on February 7, 1984.

Campbell first argues that Judge Martin erred

in refusing to instruct the jury that, if his business was inseparable from the subject real estate and was destroyed by the taking, the going concern value of the business is compensable.

The appellate posture of this issue is somewhat confused. As we stated previously, Judge Martin ruled prior to trial that damages for loss of good will and the going concern value were not compensable in this case as a matter of law. While defendant moved to have this ruling certified for immediate appeal under GCR 1963, 806.3(1)(a)(ii), the motion was denied and Campbell did not pursue an interlocutory appeal. The city argues that, because of Judge Martin's ruling excluding evidence of going concern value, none was offered and, therefore, the court did not err in refusing to instruct the jury on this question.

The question of going concern value is further confused by the fact that, during the Poletown litigation, owners' claims for going concern value were uniformly denied by pretrial motion by Judge Martin, while the other specially assigned judge, Judge David Vokes, permitted these claims.

Because Judge Martin's pretrial order of summary judgment excluded from the trial any evidence of going concern value in this case, Campbell should be arguing that the court's pretrial ruling was erroneous rather than arguing that the court's failure to instruct the jury as to going concern value was erroneous. We believe, however, that the confusion described above and fairness to both parties requires us to treat Campbell's argument as one directed at Judge Martin's ruling that evidence as to going concern value must be excluded as a matter of law.

In *Detroit v Michael's Prescriptions, supra,* pp 811-812, 819-820, 821-823 Judge MICHAEL KELLY stated:

"The general rule of law is that, unless a business is taken for use as a going concern, the owner of the business located on a condemned parcel of realty will not be compensated for the good will or going concern value of the business. *In re Jeffries Homes Housing Project,* 306 Mich 638, 651; 11 NW2d 272 (1943); *In re Lansing Urban Renewal (Lansing v Wery),* 68 Mich App 158, 163; 242 NW2d 51 (1976), *lv den* 397 Mich 828 (1976). See also 58 ALR3d 566, § 2, p 568; 81 ALR3d 198, § 2, p 202 and 17 ALR4th 337, § 17, p 437 ff. The justification for this general rule is that the owner of a successful business may generally transfer that business to another location. Where the government does not appropriate the business for its value as a going concern, the owner of that interest need not be compensated since nothing is taken. See *Community Redevelopment Agency of the City of Los Angeles v Abrams,* 15 Cal 3d 813; 126 Cal Rptr 473; 543 P2d 905; 81 ALR3d 174 (1975), *cert den* 429 US 869; 97 S Ct 180; 50 L Ed 2d 149 (1976).

"As with most general principles of law, however, the rule prohibiting recovery is not without exception.

\* \* \*

"[I]t is clear that recovery of the going concern value of a business lost to condemnation will depend on the transferability of that business to another location. If the business can be transferred, nothing is taken and compensation is therefore not required. Whether a business is transferable will be decided on a case by case basis inasmuch as a specific factual analysis is required. Generally, however, recovery will be allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project. In large scale condemnation projects such as Poletown, involving the elimination of an entire segment of the residential and business community, transferability of neighborhood businesses is often foreclosed.

\* \* \*

"In our view, a significant factor in the inability of Michael's Prescriptions to relocate as a going concern is the nature of the condemnation project itself. As Jus-

tice RYAN pointed out in his dissenting opinion in *Poletown Neighborhood Council,* [410 Mich 616; 304 NW2d 455 (1985)] The Poletown project swept away an entire community, 'a tightly-knit residential enclave of first- and second-generation Americans'. 410 Mich 658. The Poletown condemnations entailed 'intangible losses, such as severance of personal attachments to one's domicile and neighborhood and the destruction of an organic community of a most unique and irreplaceable character'. 410 Mich 682-683. The success of Michael's Prescriptions was attributable in part to the locational advantage of being so near a hospital, an emergency room, a clinic, and two physicians' offices. Its success also derived in no small part from the character of the neighborhood as described above and the good will of its established customers. Because of the condemnation of the entire surrounding neighborhood, the relocation of Michael's Prescriptions and other similar neighborhood businesses was realistically foreclosed by the scattering of established customers throughout the metropolitan area and by the elimination of other 'business-generating businesses'. This situation was recognized in *Community Redevelopment Agency of the City of Los Angeles v Abrams, supra,* pp 825-826, where the Court rejected a claim similar to the one submitted in the instant case but nevertheless stated:

" 'We judicially notice the following facts "of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute" * * *: The conditions of modern American life, including the increased concentration of people in urban centers and the need for increased governmental activity in the areas of transportation and urban redevelopment, have resulted in the disruption and displacement of increased numbers of people and businesses by government projects. Moreover, the peculiar nature of urban redevelopment programs, which act upon large areas of contiguous property, often involves the uprooting of entire neighborhoods and the the consequent dispersal of their business and residential occupants to other areas. * * *

" 'While the effects of this process are severe in both a personal and social sense for the residential occupants

of areas subjected to redevelopment, its effects upon business occupants may be even more serious. Once such effect relates to the business goodwill which such a businessman has built up in the location of which he is deprived by condemnation. In some cases, as for example in the case of a mail order business whose clientele is not rooted in the area affected by redevelopment, business goodwill may be transferred with relative ease to a new location outside the redevelopment area. At the other end of the spectrum, however, are businesses which depend on a clientele within the redevelopment area. In many such cases business goodwill is based almost wholly upon the businessman's personal acquaintance with his customers and his knowledge of their particular needs. Such goodwill is by its nature not freely transferable within the context of wholesale condemnation pursuant to urban redevelopment, for the inevitable effect of such condemnation is to disperse the businessman's clientele throughout the urban area, with the result that any new location chosen by him will be unable to continue to profitably serve a significant portion of them.' (Citations omitted.) 15 Cal 3d 825-826.

"In the instant case, Michael's Prescriptions lost its leasehold interest in the underlying realty, its established customers and the prescription market generated by the neighborhood hospital, clinic and physicians' offices. Unlike *Whalings [Detroit v Whalings, Inc,* 43 Mich App 1; 202 NW2d 816 (1972)] and *Gaffield [State Highway Comm v Gaffield,* 108 Mich App 88; 310 NW2d 281 (1981)], this respondent did not provide the type of specialized product that would encourage its established customers to continue patronage at a new and more distant location. As this Court recognized in rejecting the claim for going concern value in *Whalings, supra,* '[f]or this case to come within the facts of *L & L [State Highway Comm v L & L Concession Co,* 31 Mich App 222; 187 NW2d 465 (1971)], the entire downtown area would have to be included in the condemnation order'. The Poletown project fits this requirement hand and glove." (Footnote omitted.)

As Judge KELLY's opinion makes clear, a case-

by-case assessment of the transferability of the subject business must be conducted with an eye toward the unique and extensive condemnation project. Judge Martin, in his opinion on the motion for summary judgment on Campbell's claim for going concern value, did not, in his analysis of this Court's prior opinions, take the nature of the Poletown condemnation project into account. We therefore remand this case to the circuit court for reconsideration of plaintiff's motion for summary judgment in light of *Detroit v Michael's Prescriptions, supra.* If the circuit court concludes that its earlier opinion granting the city's motion for summary judgment was erroneous, the circuit court shall hold a new jury trial on the issue of fair compensation for the going concern value only. The new jury verdict, it any, shall simply be added to Campbell's earlier jury verdict of $85,000. An amended judgment shall then be entered by the court accordingly. Should the court determine, however, that its initial opinion granting summary judgment was correct, it shall simply affirm Campbell's earlier judgment. Either party mày, of course, appeal from the circuit court's opinion on remand analyzing this case in light of *Michael's Prescriptions, supra,* in accordance with applicable court rules.

Campbell's remaining arguments may be disposed of briefly. Campbell's argument that the court erred in excluding evidence of business interruption damages cannot be addressed at this time in view of our remand on the issue of going concern value. As stated in *Detroit v Michael's Prescriptions, supra,* p 819, fn 2:

"We note, however, that where a business is transferable, the business owner may recover for certain business interruption expenses. See *In re Park Site on*

*Private Claim 16,* 247 Mich 1; 225 NW 498 (1929). It should be clear that recovery for business interruption damages and recovery for going concern value are mutually exclusive since one assumes the continuation of the business and the other assumes its loss. This distinction was not always made by defendants below."

Campbell also argues that the trial court erred in directing the jury to disregard testimony concerning Campbell's replacement property, and specifically the fact that Campbell owned "DeClark's Bar" and only rents the Silver Cup Lounge. We disagree.

We find no authority for the proposition that the owner of a condemned property is entitled to compensation for a change in ownership status. The focus must be on fair compensation for the condemned property, not on the replacement property. While Campbell's change in ownership status may be a relevant consideration in the determination of his claim for either the going concern value of the business or the business interruption damages, it is not a separate element of compensation.

Campbell's remaining arguments are without merit and need not be addressed. This case is, therefore, remanded to the circuit court for reconsideration in light of *Detroit v Michael's Prescriptions, supra.*

Remanded. No costs, neither party having prevailed in full.