CITY OF DETROIT v HOSPITAL DRUG COMPANY

Docket No. 102890. Submitted June 22, 1988, at Detroit. Decided
    August 29, 1988. Leave to appeal denied, 432 Mich 895.

    The City of Detroit initiated in Wayne Circuit Court formal
    condemnation proceedings against Hospital Drug Company,
    located at 6501 Chene, Detroit, and identified as Parcel No.
    1198, as part of Central Industrial Park Project condemnation,
    more commonly known as the Poletown condemnation. The
    city paid Hospital Drug its estimate of just compensation for
    the land and building in the amount of $87,000 and $29,860 for
    the immovable trade fixtures. The city did not offer or pay for
    the loss of Hospital Drug's liquor license or the going-concern
    value of the business. The city filed a motion for summary
    judgment, alleging that Hospital Drug had failed to state a
    claim for going-concern value of the business as part of proper
    damages for the city's taking of the property. The motion was
    granted. Hospital Drug appealed, and the Court of Appeals
    reversed, finding that Hospital Drug had adequately stated a
    claim for going-concern-value damages, unpublished opinion
    per curiam of the Court of Appeals, decided March 20, 1986
    (Docket No. 68151). The case was remanded to the circuit court
    for a determination of the going-concern-value damages due to
    the taking. Following a three-day jury trial, Hospital Drug
    Company was awarded $753,000 for the going-concern value of
    its business as an element of damages. Judgment was entered,
    Michael J. Connor, J. The City of Detroit appealed.

    The Court of Appeals held:

    1. The trial court did not err in refusing to give a jury
    instruction requested by the city to the effect that where the
    value of the property and the value of the business there
    conducted cannot be readily separated, as Hospital Drug con-
    tends is the situation here, the value of the property may
    reflect the value of the business there operated and the award

REFERENCES

Am Jur 2d, Eminent Domain §§ 285-287, 291, 353, 443-448; Evi-
    dence §§ 785 et seq.
"Going concern" or good will value as element of lessee's compensa-
    tion for taking leasehold in eminent domain. 58 ALR3d 566.

of going-concern value as a separate element of damages is redundant. The instruction which was given by the court instead of the one requested by the city clarified the issues in the case and was entirely proper since Hospital Drug maintained that it was the unique location not easily duplicated that made it a highly successful and profitable business. Recovery for going-concern value is allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project.

2. The trial court did not err in denying the city's motion for a directed verdict on the issue of going-concern value.

3. The court's jury instruction on the range of going-concern value was not erroneous.

4. The court did not err in giving a jury instruction in which the jury was told it could find that Hospital Drug was not entitled to any compensation, but that if Hospital Drug was entitled to recovery for going-concern value, the award must be between $750,000 and $1,800,000. There was no mixing of special and general verdicts.

5. The court erred in allowing testimony as to the going-concern value based on the year 1981 when the date of the taking was November 24, 1980, but the error was harmless. The jury did not rely on this witness' figures in awarding just compensation.

6. No error resulted from the admission into evidence of three photographs depicting the Poletown area. The photographs were relevant and probative of the issue whether Hospital Drug could be transferred to another location.

7. It was error for the trial court to allow evidence concerning Hospital Drug's costs for a replacement store, but the error does not require reversal since the owner of Hospital Drug was not seeking recovery for the replacement costs of his business.

Affirmed.

1. Eminent Domain — Business Property — Going-Concern Value.

Recovery of the going-concern value of a business lost to condemnation depends upon the transferability of the business to another location; if the business can be transferred, nothing is taken and compensation is therefore not required; however, recovery will generally be allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project.

2. MOTIONS AND ORDERS — DIRECTED VERDICT — JUDGMENT NOTWITH-
STANDING THE VERDICT — APPEAL.

The Court of Appeals, in reviewing a trial court's denial of a
defendant's motion for a directed verdict or judgment notwith-
standing the verdict, must view the testimony and all legiti-
mate inferences that may be drawn therefrom in the light most
favorable to the plaintiff and determine whether the evidence
was sufficient to establish a prima facie case; if reasonable
jurors could honestly have reached different conclusions, the
motion should have been denied since no court may substitute
its judgment for that of the jury.

3. EMINENT DOMAIN — DAMAGES — JURY AWARDS.

An award made by the jury in condemnation proceedings within
the minimum and maximum amounts of damages, as disclosed
by the record, is proper.

4. EMINENT DOMAIN — JURY INSTRUCTIONS — SPECIAL VERDICTS —
GENERAL VERDICTS.

The trial court in a condemnation action did not err in instruct-
ing the jury that it could determine for any of three reasons
that the property owner was entitled to no compensation but
that, if compensation was to be awarded, the amount would
have to be within the range of value presented by the evidence;
there was no mixing of special and general verdicts.

5. EMINENT DOMAIN — AWARDS — MARKET VALUE — DATE OF
TAKING.

An award in a condemnation action must be based upon the
market value of the property as of the date of the taking of the
property.

6. EVIDENCE — PHOTOGRAPHS.

Photographs which are accurate, have probative value in the
case, and are helpful in throwing light upon a material point in
issue may be admissible into evidence.

7. EMINENT DOMAIN — EVIDENCE — REPLACEMENT COSTS.

Evidence concerning a store owner's costs for a replacement store
is inadmissible in condemnation proceedings.

*James C. Cobb, Jr., P.C.* (by *James C. Cobb, Jr.*),
for City of Detroit.

*Weisman, Trogan, Young & Schloss, P.C.* (by
*Martin C. Weisman*), for Hospital Drug Company.

Before: CYNAR, P.J., and SULLIVAN and J. R. ERNST,* JJ.

PER CURIAM. Following a three-day jury trial in Wayne Circuit Court, the jury awarded Hospital Drug Company just compensation in the amount of $753,000 for the going-concern value of its business as an element of damages due to the Central Industrial Park Project condemnation, more commonly known as the Poletown condemnation. A final judgment and order confirming the jury verdict was entered on June 10, 1987. An order denying the City of Detroit's motion to set aside the verdict and judgment and for entry of judgment in favor of the city or, alternatively, a new trial was entered on August 5, 1985. The city now appeals as of right.

This case arises out of the Poletown condemnation which commenced sometime in November, 1980. The city initiated formal condemnation proceedings against Hospital Drug, located at 6501 Chene, Detroit, Michigan (identified as Parcel No. 1198), on November 24, 1980.

Hospital Drug was a sole proprietorship, owned and operated by William Barron since 1946. In accordance with condemnation procedures, the city paid Hospital Drug its estimate of just compensation for the land and building in the amount of $87,000 and $29,860 for the immovable trade fixtures. The city did not offer nor pay for the loss of Hospital Drug's liquor license or the going-concern value of the business.

On June 14, 1982, the plaintiff city filed a motion for summary judgment pursuant to GCR 1963, 117.2(1). The city alleged that Hospital Drug had failed to state a claim for going-concern value of the business as part of proper damages for the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

city's taking. By order dated July 7, 1982, the city's motion was granted. Hospital Drug appealed to this Court the grant of summary judgment.

On March 20, 1986, this Court reversed the grant of summary judgment on the issue of damages for going-concern value on the basis that Hospital Drug had adequately stated a claim for going-concern-value damages under *Detroit v Michael's Prescriptions,* 143 Mich App 808; 373 NW2d 219 (1985). The case was remanded to the trial court for a determination of the going-concern value damages due to the taking. *Detroit v Hospital Drug Co,* unpublished opinion per curiam of the Court of Appeals, decided March 20, 1986 (Docket No. 68151).

Trial on the issue of the value of the going concern commenced on April 1, 1987. The parties stipulated that Hospital Drug would go forward with the evidence.

Barron, a pharmacist, owner and operator of Hospital Drug for thirty-five years, testified that the location of his business on the northwest corner of Chene and Milwaukee Streets was directly across from one of the busiest branches of the National Bank of Detroit. On the other corner was a commercial building with doctors' offices. Buses ran on both Chene and Milwaukee with two stops at the corners. St. Joseph's Mercy Hospital was one block away. There were many other doctors' offices in the immediate area. One block away, there was a large apartment building with three hundred to four hundred apartments. There were also many businesses in the area, including the Dodge Main Plant, Bulldog Electric, Hooker Chemical, Bohn Aluminum, Houdaille, Midwest Paper, and Mistele Coal. A Cunningham's Drug Store, which had been in the area, closed sometime

around 1950. The only other competitor for prescription drugs was Michael's Prescriptions.

Barron described Hospital Drug as being a general store of about 2,000 to 2,500 square feet. One third of the store was devoted to prescription drugs, one third to liquor, beer, and wine, and the balance to general drugs, cosmetics, appliances, and other sundries. There were no other sundry stores located nearby.

Barron testified that customers came from all areas. Premier Famous Restaurant, which was located in the building, did a tremendous lunch business consisting largely of office workers in the area who also made purchases at Hospital Drug. The hours of operation were 8:00 A.M. to 6:00 P.M., Monday through Saturday, and 10:00 A.M. to 2:00 P.M. on Sunday. The drug store extended no credit to customers.

When Barron learned of the condemnation in 1980, he started looking for another place to relocate Hospital Drug. He initially went to the city for help. After several afternoons of looking with city officials, he was unable to find an adequate location for the drug store. Barron also looked on his own along with his son, a real estate broker. There was no available spot comparable to the present location. Barron sought to have the Liquor Commission transfer his liquor license, but, due to the restrictions placed on the license, he was unable to have it transferred.

Ultimately, Barron purchased the Jet Party Store in Hamtramck for $50,000. The store had previously had a liquor license. The store was located at 876 Joseph Campau on the corner of a residential side street. The neighborhood was run down with no commercial buildings or offices. In the area there was only one business, Kowalski Meats.

Sales at the new party store were a lot less than at the old store. Barron decided to sell out. He sold the store for $60,000 on February 4, 1982, for a loss of roughly $40,000. Barron attributed the loss to the fact there were no businesses in the area, the location of the store, and more competition because of other pharmacies in the area.

Orville Lefko, a certified public accountant, chartered financial analyst, and real estate broker, was retained in May, 1981, to perform a financial analysis of Hospital Drug. He was asked to determine (1) whether Hospital Drug was in a unique location and, if so, (2) the going-business value of the drugstore. Lefko's training and inclination in valuing businesses is to take a conservative approach. A liberal approach would result in a higher valuation.

Lefko concluded that Hospital Drug was in a unique location by looking at comparable drugstores and comparing the financial results of Hospital Drug with the comparables. Charts were introduced to show this comparison to the jury. Lefko concluded that the reason for the extraordinary results of Hospital Drug was the location. The factors that made the location unique were the densely populated neighborhood, the corner location, the bus lines with corner stops, the bank across the street with a large parking lot which was also used by Hospital Drug customers, numerous plants in the area, the lack of competition (only Michael's Prescriptions), the hospital and doctors' offices, and the restaurant in the building. Lefko took into account the closing of the Dodge Main Plant in his analysis. He found that it must have had some impact, but it was not reflected in the sales. Sales went up after the closing.

In determining the going-concern value placed on this unique business location, Lefko followed

"Ruling 59-60" of the Internal Revenue Service issued in 1959. According to Ruling 59-60, a finding of the normalized net income figure (cash flow), which is earnings adjusted for depreciation and management salaries, is calculated. That figure came to $142,000. This figure is then multiplied by the capitalization rate (the proper return for investment). Once this was done, the going-concern value was calculated to be $852,000, less inventory value, moveable fixtures, and the liquor license, resulting in a final figure of $753,000. The city did not cross-examine Lefko.

Peter H. Burgher, a certified public accountant, registered investment advisor, and expert in evaluating going-concern values, was hired in December, 1986, to review the data, including Lefko's analysis and report, and present an independent analysis of the going-concern value of Hospital Drug. Burgher opined that the going-concern value of the drugstore was somewhere between $1,200,000 and $1,800,000. Burgher's figures represented the value before deductions for which Barron had already been compensated (i.e., fixtures, liquor license, and inventory).

William T. Thompson, real estate administrator at the Community and Economic Development Department with the city, testified that he was chief of acquisition and disposition of the Poletown project. Thompson stated that, in terms of analyzing property taken in condemnation proceedings, the business and the real estate were considered inseparable. That was the method used in valuing Hospital Drug.

After Thompson's testimony, the city rested. The city moved for a directed verdict, arguing that because the business and the real estate were inseparable, there was nothing for the jury to decide. The motion was denied. Following the ju-

ry's award of $753,000 to Hospital Drug for its going-concern value, the city appealed. Hospital Drug filed a motion to affirm, which the Court of Appeals denied on March 18, 1988.

First, the city assigns error to the trial court's refusal to issue the following requested instruction:

> You have heard evidence that the value of the going concern could only be considered if it was determined that the location was unique. Where the value of the estate in land and the value of the business there conducted cannot be readily separated, the valuation ascribed to the estate in land may reflect the value of the business there operated. In such a case, it is entirely sound to refuse to award as a separate element of damages anything for loss of going concern value or goodwill to do so would be redundant.

The city claims that since Hospital Drug alleged that the success of its business could be attributed to no other factor than its location, then the issue whether the real estate and the business were inseparable became part of the case. The city alleges that, if the realty and the business were inseparable, any amount awarded for going-concern value would necessarily include a valuation of the real estate interest and would be redundant since Hospital Drug had already received compensation for the real estate. The city's requested instruction is derived from the case of *State Highway Comm v L & L Concession Co,* 31 Mich App 222; 187 NW2d 465 (1971). In that case, the State Highway Commission, under MCL 213.171 *et seq.*; MSA 8.171 *et seq.*, condemned a parcel of realty in Grand Rapids improved by an automobile racetrack and grandstands. L & L was the owner of a leasehold interest in the property where it held

the exclusive grandstand concession rights for a specified time period. L & L sought to introduce evidence regarding the going-concern value of its leasehold interest. It was denied the opportunity to do so. On appeal, this Court held that it was error to exclude evidence of going-concern value. While recognizing that the good will or going-concern value of a business is generally not recoverable in condemnation proceedings, this Court nevertheless observed:

> In a large number of cases owners and lessees have recovered going-concern value where the condemned property could not be realistically valued apart from the business there conducted, or, as it is sometimes said, the business for which the property is best "adapted." [31 Mich App 232.]

Additionally, in *L & L,* pp 234-235, the Court stated that, where the value of the leasehold as an estate in land and the value of the business there conducted cannot readily be separated, the value ascribed to the leasehold may reflect the value of the business there operated, and the award of going-concern value as a separate element of damages is redundant. It is this aspect of the *L & L* case that the city claims applies to the case at bar. We disagree.

The trial judge issued the following instruction:

> Now members of the Jury, you may find that Hospital Drugs is not entitled to any compensation because the owner could transfer the business to another location. Or any award would, by necessity include a payment for real estate for which he has already been compensated. Or you may find the Plaintiff has already been fairly and adequately compensated.

In this Court's March 20, 1986, decision, *supra,* we

had already determined that Hospital Drug was entitled to recovery of its going-concern value. We find no error requiring reversal with the instruction that was issued. As this Court stated in *Michael's Prescriptions, supra,* p 819, recovery for going-concern value is allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project. The trial court's instruction clarified to the jury the issues in the case and was entirely proper since Hospital Drug maintained that it was the unique location not easily duplicated that made it a highly successful and profitable business. We find no error in the instruction issued and the trial court's refusal to issue the city's requested instruction.

In its second claim on appeal, the city argues that the trial court erred by denying the city's motion for a directed verdict on the issue of going-concern value. The city contends that through Thompson's uncontroverted testimony it was established that the business and real estate were inseparable, leaving nothing for the jury to decide.

In reviewing a trial court's denial of a motion for a directed verdict, this Court must view the testimony, and all legitimate inferences that may be drawn therefrom, in the light most favorable to the nonmoving party and determine whether the evidence is sufficient to establish a prima facie case. *Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986). If reasonable jurors could honestly have reached different conclusions, the motion should have been denied and the case should have been decided by the jury since no court has the authority to substitute its judgment for that of the jury. *Id.; Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 514; 421 NW2d

213 (1988). We find no error in the trial court's decision to deny the city's directed-verdict motion. We believe that viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to Hospital Drug, reasonable jurors could disagree whether the compensation for going-concern value included a payment for the real estate for which Hospital Drug had already been compensated.

In its third claim on appeal, the city alleges that the trial court erred by instructing the jury on an improper range of value. Specifically, the city takes issue with the court's instruction that, if the jury decided that Hospital Drug was entitled to going-concern value, the minimum amount could not be less than $753,000, as testified to by Lefko, and the maximum amount could be as high as $1,800,000, as testified to by Burgher.

Our review of the instruction on the range of going-concern value convinces us that no error took place. The instruction was supported by SJI2d 90.23, Range of Testimony,[1] and Michigan case law. In *In re Grand Haven Hwy,* 357 Mich 20, 29; 97 NW2d 748 (1959), the Court stated that an award made by the jury in condemnation proceedings within the minimum and maximum amounts of damages, as disclosed by the record, is proper. Similarly, in *Michael's Prescriptions, supra,* p 823, the Court held that, since the verdict was within

---

[1] The instruction states:

In reaching a verdict, you must keep within the range of the testimony submitted. You may accept the lowest figure submitted as to a particular item of damage, the highest figure submitted, or a figure somewhere between the highest and lowest. You may not go below the lowest figure or above the highest figure submitted.

In this case, the lowest valuation placed in evidence for the property is $_____._____ and the highest valuation is $_____._____. Any award between those two figures would be a proper jury verdict; any award which is not between those two figures would not be a valid jury verdict.

the range of the valuation testimony offered at trial, the Court would not disturb the verdict on appeal.

In this case, Lefko testified to the minimum amount of the going-concern value while Burgher's testimony revealed the possible maximum amounts. The city presented no testimony as to the going-concern value. Thus, the court correctly instructed the jury on the range of value.

The city also claims as error the following instructions to the jury:

> Now members of the jury, you may find that Hospital Drugs is not entitled to any compensation because the owner could transfer the business to another location. Or any award would, by necessity include a payment for real estate for which he has already been compensated. Or you may find the Plaintiff has already been fairly and adequately compensated.
>
> However, if you find the Plaintiff is entitled to recovery for going concern value, you should keep in mind the lowest valuation placed in evidence for the going concern of Hospital Drugs, is $750,000.00. And the highest valuation is $1,800,000.00.

The city claims that these two instructions constituted an improper mixing of a special verdict question, to wit: whether Hospital Drug was not entitled to compensation because the owner could transfer the business elsewhere, because the award would include a payment for real estate, or because Hospital Drug had already been fairly compensated. The general verdict question concerned the range of value. In support, the city relies on *In re Medical Center Rehabilitation Project,* 50 Mich App 164; 212 NW2d 780 (1973). In that case, the jury was instructed to find and return in writing

both a special verdict as to the date of taking and a general verdict as to the value on that date. The Court found that the verdicts were inconsistent since the jury's value did not reflect the evidence presented for the date which the jury determined was the date of the taking. The panel stated:

> GCR 514 authorizes either a special verdict or a general verdict—*not* both.
>
> If a verdict as to *value* is brought in then it must stand alone. It cannot be mixed with special questions such as the date of taking. Under proper instruction the jury can compute a final monetary figure, including interest to the date of trial, and render only a general verdict. If, as here, value is limited to uncontradicted evidence, then special questions submitted in accordance with GCR 514 procedures can be utilized in lieu of a general verdict as to value. [Emphasis in original. 50 Mich App 168-169.]

However, in *In re Acquisition of Land—Virginia Park,* 121 Mich App 153, 166; 328 NW2d 602 (1982), the Court found that, where the jury was instructed to return both a general verdict of compensation as of the taking date and a special verdict in regards to the date of the taking, the verdicts were not inconsistent because the value was within the range of evidence presented for the date of the taking found by the jury.

In this case, there was no mixing of special and general verdicts. The jury was instructed to fill in on the blank space provided on the verdict form the amount of compensation Hospital Drug should receive. The jury was instructed that it could determine for three reasons that Hospital Drug was entitled to no compensation. But, if compensation was to be awarded, then the amount must be within the range of value presented by the evi-

dence. The jury was told the date of the taking. Thus, the trial court did not err by issuing the instructions with respect to the verdict.

The city also takes issue with allowing the jury to hear Burgher's valuation of the going-concern since his figure was based on the year 1981 when the date of the taking was November 24, 1980. While we agree with the city that it was error to receive this testimony since in condemnation cases an award must be based upon the market value of the property as of the date of the taking, SJI2d 90.13, the error was harmless. MCR 2.613(A). The jury returned a verdict in the amount suggested by Lefko. Even if Burgher valued the property for 1981, the jury did not rely on his figures in awarding just compensation.

Next, the city claims that it was error to admit three photographs depicting the Poletown area. We find no abuse of discretion in the admission of the three photographs. They were accurate, had probative value in the case, and assisted in casting light on some material point in issue. In this case, the photographs were relevant and probative of the issue whether Hospital Drug could be transferred to another location. We find no error. See *McMiddleton v Otis Elevator Co,* 139 Mich App 418, 423; 362 NW2d 812 (1984), modified on other grounds 424 Mich 862 (1985).

Finally, the city alleges that it was error to allow evidence concerning Hospital Drug's costs for a replacement store since this type of evidence is inadmissible in condemnation proceedings. While we agree that this testimony was improper, there was no showing in the record that the owner was seeking recovery for the replacement costs of his business. Therefore, admission of this testimony is not error requiring reversal. *City of Fenton v Lutz,* 73 Mich App 117, 124; 250 NW2d 579

(1977). We decline to address the city's claim that it was error to allow Lefko to testify that any award in this case would be taxed since the city cited no authority for this claimed error.[2]

Affirmed.

---

[2] Although the city cites *In re Urban Renewal, Elmwood Park Project*, 376 Mich 311; 136 NW2d 896 (1965), the case has nothing to do with the issue raised on appeal.